286 P.2d 1060

**STATE of Utah, Plaintiff and Appellant,**

v.

**James P. SANDMAN, Defendant and Respondent.**

No. 8202.

Supreme Court of Utah.

Aug. 15, 1955.

E. R. Callister, Atty. Gen., Walter L. Budge, Asst. Atty. Gen., for appellant.

Arthur Woolley, Ogden, for respondent.

CROCKETT, Justice.

James P. Sandman was charged by information with the crime of resisting a public officer in the discharge of his official duties. After the jury was impaneled and sworn and the district attorney made his opening statement, counsel for defendant interposed a motion to dismiss. The motion was granted upon the ground that the information, supplemented by the opening statement and an offer of proof by the state, failed to make out a public offense.

The state has appealed as permitted by statute [1] to test the propriety of such ruling.

The bill of particulars and the offer of proof show these facts, which for the purpose of this review we must assume to be true: On July 18, 1953, defendant James P. Sandman and his party were fishing in a creek in Wasatch County called Stinking Springs. Game Warden Leo A. Cox came upon a lady in the party and noticed on her clothing indications of hamburger, the use of which as fishing bait is prohibited by law in this state. In conversation with her he learned that her husband was fishing a bit down stream. The warden then went down stream and, approaching the defendant Sandman, observed him angling with bait which he said appeared to be hamburger. He told Sandman that he was the game warden and requested to see the bait, whereupon Sandman turned away and jerked his pole rapidly back and forth in a swishing movement which Warden Cox in-

1. Section 77-39-4, 5, U.C.A.1953.

terpreted as an attempt to dislodge the bait from the hook. Cox grabbed hold of the fishing pole to prevent this; a scuffle ensued wherein both parties fell into the creek; Mr. Cox fell into the stream on his back, lodging between two rocks; and "as he attempted to raise his head from the stream, he was struck violently about the head and face by the defendant, Sandman * * *. [W]hen Mr. Cox was again able to regain his feet and while he was checking the flow of blood from the wound * * * the defendant Sandman took the bait can, which was attached to his * * * belt and tipped the contents into the water and rinsed the can out and also * * * broke the leader from the line and threw the hook and leader into the water."

It was stated by the district attorney that the state would not try to prove that the grabbing of the pole was intended in the performance of an arrest, but that it was done to prevent the destruction of evidence which the warden was trying to obtain.

We note here that the questions whether, under the circumstances, Mr. Cox could have made an initial arrest, whether with or without making an arrest he would have been justified in searching defendant's person for illegal bait, and whether greater violence was used than the circumstances warranted and, if so, the effect thereof, are matters which are not dealt with herein.

The question we confront is whether the trial court erred in granting the motion to dismiss on the ground that the facts above set forth do not make out a prima facie case of violation of Section 76–28–54, U.C. A.1953, which provides:

"Every person who wilfully resists, delays or obstructs any public officer in discharging, or attempting to discharge, any duty of his office * * * is punishable by fine not exceeding $1,-000 or by imprisonment in the county jail not exceeding one year, or by both."

thus constituting an indictable misdemeanor.

In order to make out an offense under this statute it must appear that (A) a duly constituted public officer (B) engaged in the performance of an official duty (C) was obstructed or resisted by defendant.

(A) There can be no question that game wardens are by statute constituted peace officers who have the "same power, and shall follow the same procedure in making arrests, and in the handling of prisoners and the general enforcement of this Code, as other peace officers." [2]

(B) Respecting the contention that Warden Cox was not performing an official duty, the Fish & Game laws make it unlawful to "take * * * or attempt to take" [3] fish by using hamburger as bait.[4]

---

2. Section 23–10–1, U.C.A.1953 (Cum. Supp.)

3. Section 23–3–7, U.C.A.1953 (Cum.Supp.)

4. Angling Proclamation for 1953, issued pursuant to Section 23–2–14, U.C.A.1953 (Cum.Supp.), and Section 23–3–7, U.C.A. 1953 (Cum.Supp.)

The only practical means for an officer to discover whether the law is being violated in this respect is to make an inspection of substances being used. Acting under the statutory mandate to "enforce the provisions of this Code" [5] Officer Cox was making observations as to the bait fishermen in the locality were using. His encounter with the lady upstream had raised a suspicion that her party might be using hamburger, and upon approaching Mr. Sandman his observations led him to believe that such was the case. Defendant's refusal to permit an inspection and the attempt to dispose of the bait before Officer Cox could inspect it further bolstered the warden's belief that the defendant was violating the law. Under these facts the warden would have been derelict in his duty if he had not sought to inspect defendant's bait.

(C) The further question remaining is whether the defendant's conduct in refusing to permit inspection of his bait and attempting to dispose of it amounted to an obstruction or resistance of an officer in the performance of his duty. Such interference or resistance need not be in the form of physical force or violence, but it is sufficient that there be some direct action amounting to affirmative interference.[6] Thus in People v. Rivera [7] it was held that the defendant was properly convicted of obstructing an officer in the performance of his duty for destroying milk before it could be inspected by the Public Milk Inspector who was about to do so. Similarly, in Johnson v. State ex rel. Maxcy [8] the injection of a chemical into citrus fruit juice about to be inspected was held to be obstruction of an inspector in the performance of his duties.

In the case at bar Mr. Cox had informed the defendant that he was a game warden. His attempt to observe what the defendant was using as bait and his request to see it were not unreasonable and were consistent with his duty. Under the rationale of the above cases, defendant's conduct in refusing the request and disposing of the bait which the warden was attempting to inspect amounted to resisting and obstructing the officer in the performance of his duty in violation of the statute. The court should have allowed the trial to proceed.

The judgment is reversed and remanded, but in view of the double jeopardy protection afforded defendant, there can be no further proceedings in this case.[9]

McDONOUGH, C. J., and WADE, J., concur.

HENRIOD, Justice.

5. Section 23–10–1, U.C.A.1953 (Cum. Supp.)

6. 67 C.J.S., Obstructing Justice, § 5(b).

7. 25 Porto Rico Reports 700.

8. 99 Fla. 1311, 128 So. 853.

9. State v. Thatcher, 108 Utah 63, 157 P. 2d 258; as to when jeopardy attaches, see State v. Whitman, 93 Utah 557, 74 P.2d 696.

I concur because I believe, as suggested by the main opinion, that the Utah fish and game laws are interpretable to authorize game wardens reasonably to inspect a fisherman's bait in order to enforce such laws, and there is nothing here that would warrant anyone in concluding that what the warden did or was about to do was either unreasonable, or provocative of any physical violence that would interfere with what, up to that point, I believe, was a reasonable exercise of the warden's statutory enjoinder to enforce the fish and game laws.

WORTHEN, Justice (dissenting).

I dissent. The defendant was charged by information with the crime of resisting a public officer of the State of Utah in attempting to discharge a duty of his office. The following pertinent facts are stated in the majority opinion:

"The warden * * * observed [Sandman] angling with bait *which he said appeared to be hamburger*. He told Sandman that he was the game warden and *requested* to see the bait, whereupon Sandman turned away and *jerked his pole rapidly back and forth* in a swishing movement which Warden Cox *interpreted* as an attempt to dislodge the bait from the hook. Cox grabbed hold of the fishing pole to prevent this; a scuffle ensued wherein both parties fell into the creek * * * '[W]hen Mr. Cox was again able to regain his feet * * * the defendant Sandman took the bait can, which was attached to his * * * belt and

tipped the contents into the water and rinsed the can out and also * * * broke the leader from the line and threw the hook and leader into the water.'" (Emphasis added.)

Since this case was dismissed by the court and taken from the jury the order of the court must be reversed if the State, in the Bill of Particulars and the offer of proof, presented sufficient facts which would make it possible for reasonable minds to say that beyond a reasonable doubt a crime had been committed.

Neither the Information nor the Bill of Particulars specify what the game warden was attempting to do in the discharge of his duties which the defendant resisted. The information failed to state more than the language of the statute. When the Bill of Particulars was demanded the District Attorney set out the facts herein mentioned and specified that the game warden was performing the following duties:

" * * * Leo A. Cox, while on duty in the performance of his duties as a game warden of the State of Utah * * *"

This, at best, was a mere conclusion.

The Bill of Particulars then states that the warden observed the defendant fishing and using what appeared to be hamburger or ground meat for bait. The Bill of Particulars alleges that defendant violated the provisions of Section 76–28–54 by resisting an officer in the discharge of his duties.

The Bill of Particulars in the concluding paragraph alleges:

"That the said Leo A. Cox was acting within the authority of the law and the scope of his duties, pursuant to the provisions of the statutes of the State of Utah and particularly the provisions of Section 23–3–11, U.C.A.1953; Section 23–3–7, U.C.A.1953, as amended by the Session Laws of 1953; Section 23–3–21, U.C.A.1953 and Section 76–28–39, U.C.A.1953."

The offense is charged to have been committed on July 18, 1953. By the provisions of Chapter 39, Laws of Utah, 1953, an act creating a Fish and Game Code for the State of Utah, it was provided that: "Title 23, Utah Code Annotated 1953, is repealed." By the new Fish & Game Code, the provisions contained in repealed Title 23 were substantially re-enacted, with enlarged powers vested in the Fish and Game Commission.

The Bill of Particulars alleges that defendant was fishing with *what appeared to be hamburger*. If it appeared to the warden to be hamburger, and he as an expert in that field believed it to be hamburger, he was free to place the defendant under arrest. Had he arrested defendant then under the authority of Section 23–10–1, contained in the new Fish & Game Code, he could have legally seized defendant's pole, line, hook, bait, tackle and bait can and any resistance to the officer then or thereafter would make defendant liable.

Section 23–10–1, of the 1953 Fish & Game Code provides:

"Seizures and Arrests.

"Be it further provided that all seines, guns, nets, tackles, powder, explosives, lime, poison, drugs, chemicals, shocking devices, traps and snares used for or in the unlawful taking of furs, fish or game of any kind found in the possession of or used by any person unlawfully taking or transporting furs, fish or game of any kind, shall be seized by the officers making the arrest, and upon a finding by the court that they were used in the unlawful taking or transportation of furs, fish or game, the same shall be confiscated and after having been held by the fish and game commission for a period of six months, shall be sold at public auction by the fish and game commission, and the proceeds therefrom conveyed into the fish and game fund."

Not having elected to arrest the defendant (possibly because he was unwilling to make the arrest on the available evidence) the warden demanded that defendant exhibit his bait. I am of the opinion that since the District Attorney stipulated that "the grabbing of the pole by Mr. Cox the game warden, and the grabbing of the pole was intended, not in the performance of an arrest, but for the purpose of preventing the destroying of evidence and bait" we are required to determine the case as of the time the game warden demanded to see the bait.

Does a game warden have a right (capriciously or otherwise) to demand that the bait on a fisherman's hook be exhibited? There is no statutory provision in the new code declaring that the warden may demand that bait on a fisherman's hook be taken from the water and exhibited; nor is there any provision enjoining on a fisherman the duty upon demand of a warden to so exhibit his bait, nor were there any such statutory provisions in the repealed legislation.

My attention has not been called to any case where any statute such as ours carries with it the duty on the part of a fisherman to comply with the demand that he exhibit his bait. Nor has this Court been cited to any case where the refusal to show the bait imposes on the fisherman a penalty much more severe than violating the law by fishing with hamburger.

I think it may be conceded that most fishermen, if accosted by a game warden under the circumstances detailed here, would have lifted the line, hook and bait from the water and allowed the warden to see it, but some fishermen would have resented the warden's interference.

Again, if defendant's swishing the pole, after the demand to see his bait, established that defendant was fishing with hamburger, an arrest might then have been made. The fact that defendant tipped the contents of his bait can into the water does not prove that he was fishing with hamburger, but if the warden saw that the contents of the can was hamburger and knew the defendant's fishing with hamburger was thereby established, he might have arrested defendant.

But neither the Bill of Particulars nor the offer of proof state that defendant's hook was baited with hamburger or that any hamburger was seen in defendant's bait can or in the stream after the contents were dumped out. Nor is it alleged or established that the water was roily or clear—swift or sluggish—deep or shallow. But if the warden saw what appeared to be hamburger on the hook he probably would have been better able to see a can of it dumped into the same stream.

Let it be further conceded that the State, in issuing licenses to fishermen, may attach reasonable conditions—one of which might well be the obligation on the part of the fisherman to exhibit to the warden his lures, his bait can, and whenever requested the bait on his hook.

But until the legislature sees fit to attach such conditions to the licensing of a fisherman, I am unwilling to judicially legislate such a statute and make the fisherman who declines to show his bait a violator of the law.

Let us assume that in this case, when Mr. Cox demanded the right to see defendant's bait and the demand was not complied with, that Mr. Cox grabbed the pole from defendant's hands, raised the bait from the water and found that the hook was baited with an angleworm. This defendant or any other licensed fisherman would be held guilty of

an indictable misdemeanor for having refused the demand to exhibit the bait.

Let it be assumed that the defendant's conduct in refusing to exhibit his bait was resistance. I am unwilling to concede that he thereby resisted a public officer in attempting to discharge a duty enjoined upon him, to wit, demanding to see the bait.

I am of the opinion that the ruling of the trial court was correct and that the appeal should be dismissed.