353 P.2d 178

Stratford L. WENDELBOE, Plaintiff and
Appellant,

v.

Richard B. JACOBSON, Billie Joe Lang, and
John R. Douglas, Defendants and
Respondents.

No. 9025.

Supreme Court of Utah.

June 9, 1960.

Ray S. McCarty, Sumner J. Hatch, Salt Lake City, for appellant.

Shirley P. Jones, Jr., Salt Lake City, for respondents.

McDONOUGH, Justice.

The plaintiff in this action brought suit against the defendants (1) for assault and battery, (2) for false arrest and imprisonment, and (3) for malicious prosecution. The case was submitted to a jury on those issues and from a no cause of action verdict and judgment entered thereon plaintiff appeals. He contends that the verdict is contrary to the evidence on each of the charges above stated and assigns certain other errors hereinafter discussed. The defendants having prevailed, are entitled to have us review the evidence in the light most favorable to them.[1]

At about three o'clock in the morning of April 6, 1958, the three defendants in the performance of their duties as Salt Lake City police officers were cruising just east of the business section of the city near Second South and Fifth East. They noticed an automobile parked on the west side of Fifth East heading south, near a service station under construction where there was a shed containing tools and equipment. As they drove by they noticed that the lights

1. Toomer's Estate v. Union Pacific R. Co., 121 Utah 37, 239 P.2d 163.

of the automobile were out and that the engine was running. After brief reconnoitering near there they returned and, seeing the car still there, pulled up beside it to interrogate the occupant, who turned out to be the plaintiff, Stratford L. Wendelboe, a young man about 37 years of age.

Officer Jacobson went over to the car and asked Wendelboe for his driver's license. The happenings from that time forward seem to be a good example of the old story concerning the echo which illustrates that our surroundings echo back to us just about what we project to them. It is apparent from the testimony that the plaintiff was either in a bad mood or the officer's approach inspired one. He made no verbal response, but gave the officer a temporary driving permit. Since there was no physical description of the bearer, nor other identification except a name and address, he asked for additional identification and for the registration certificate of the car. The plaintiff thumbed through the cards and other papers in his wallet but avoided giving his army identification card, which the officer saw and requested. His suspicions aroused, the officer asked plaintiff to step outside of the car and questioned him as to what he was doing there at that time of the morning. The plaintiff's answer was:

"None of your damn business," and further that "I am a citizen—and have my rights."

The officers searched the plaintiff and placed him in the police car, advising him that he was either going to identify himself satisfactorily and produce the registration certificate, or be taken to jail. According to the officers the plaintiff refused to answer questions, but persisted in trying to get out of the car so that it was necessary for Officer Lang to hold him in. Jacobson advised Lang to release him and perhaps he would tell them what he was doing there and assist in his further identification. The officers' testimony is that as the door was released plaintiff burst out, knocking both of them aside, where he struggled and tried to break away. The officers attempted to handcuff the plaintiff as the result of which a melee ensued during which blows were struck. They managed to get one handcuff upon him and he flailed with it and cut Officer Jacobson. Officer Lang then struck him on the head with a flashlight and the officers were able to subdue him and snap on the other handcuff. They then took him to the jail and thereafter to the county hospital for examination, where it was determined that he had suffered no serious injury and he was returned to jail. There he refused to talk, to stand, or to walk so it was necessary for the officers to carry him into the jail. He refused to give the booking officers his name or any information and would not get up so he was laid on the floor. Because of his strange behavior the plaintiff was given the usual treat-

ment for such cases, stripped of his clothing and placed in an isolation cell as a safeguard against possible injury. There he remained for some hours and until an attorney was called to come to his assistance.

▮▮▮ Complaints were signed by Officer Jacobson, charging the plaintiff with vagrancy, assault and battery, and resisting an officer. After various trials on these charges, all were terminated in favor of the plaintiff. It is to be kept in mind that such a determination does not necessarily mean that the arrest and the prosecution were unjustified. In the criminal case the state must prove the charge beyond a reasonable doubt, which it may fail to do. If this meant ipso facto that the prosecution was malicious, then every defendant in a criminal case who was acquitted would have such an action. Upon this civil action, the burden shifted to the plaintiff to prove by a preponderance of the evidence that the prosecution was malicious, upon a completely separate trial of the issues, and the jury found against him.

Plaintiff's claim of false arrest is based upon the assertion that the "officer cannot legally make an arrest for a misdemeanor without a warrant or unless the offense was being committed or attempted in his presence." [2] This is correct as a general statement of the law. The defendants' rejoinder is that Sec. 41–1–40, U.C.A.1953, provides that the registration certificate of a motor vehicle shall be carried in the vehicle or upon the person driving it, who must, "display the same upon demand of a police officer * * *" and Sec. 41–1–142(k) makes it a misdemeanor to violate the above section.

The issue as to whether the plaintiff violated the law in the presence of the arresting officers was correctly presented to the jury in Instruction No. 7. And the evidence was reasonably susceptible of the finding resolving the issue in favor of the defendants.

▮▮▮ Instruction No. 17 is also attacked as being erroneous on the issue of false arrest. The court told the jury that:

"The officers had the authority and the *positive and absolute* duty to investigate any circumstances or situation whatsoever which would reasonably suggest to them a reasonable possibility that a public offense was being committed or * * * was about to be committed. * * *

"If these defendants had any reasonable suspicion * * * that the plaintiff * * * might be committing any public offense whatever, or that he might be about to commit any public offense whatever, then these defendants

2. Oleson v. Pincock, 68 Utah 507, 251 P. 23.

had the power and the authority and the *absolute* duty to approach the plaintiff and ask him what he was doing at that time and place * * * They have the *positive* duty to detect, uncover, reveal, or discover the existence or presence of any fact which might show that a public offense was being committed or was about to be. committed. They have a *positive* duty to prevent crime before it occurs * * * and no person has any right whatever to resist, interfere with, obstruct or delay a police officer in the exercise of this duty. * * *" (Emphasis ours.)

We see nothing in this instruction inconsistent with the law of this jurisdiction.[3] However, we agree that the emphasized adjectives, which are particularly complained about by the plaintiff, are both unnecessary and somewhat ill-advised. The court should be wary of using terms of that character because they are argumentative and, coming from the court, may give an emphasis in the eyes of the jury greater than is intended or justified. But we do not appraise this as constituting prejudicial error.

■ On the count for assault and battery, the plaintiff argues that the physical manhandling by the officers establishes his right to recover without dispute, because he was not under arrest at the time it occurred. There can be no question but that the plaintiff was made fully aware that these were police officers and that he was being· placed under arrest.[4] Under such circumstances the officer has the right and the duty to use such force as is reasonably necessary to complete the arrest and to detain, book and charge the accused.

■ The plaintiff's contention that as to the count for malicious prosecution the verdict is contrary to the evidence can be dealt with summarily. The circumstances hereinabove delineated, viewed through the eyes of the officer, could well justify a belief that the plaintiff had committed the offenses charged and would thus warrant signing the complaint. More important, however, is the fact that the defendants" evidence shows that officer Jacobson made a full and fair disclosure of facts to the prosecutor and signed the complaint upon his advice, which constitutes a defense to the charge of malicious prosecution.[5]

A further attack upon the proceedings is plaintiff's charge that certain conduct of the trial court prejudiced him in the eyes of the jury and prevented him having a fair trial. There indeed were some unseemly difficulties during the trial. But our

3. See 10-6-66, U.C.A., 1953; 30-1-18, S.L.C. Ordinances; 76-28-54 U.C.A., 1953; 32-1-31 S.L.C. Ordinances.

4. See State v. Sandman, 4 Utah 2d 69, 286 P.2d 1060.

5. Cottrell v. Grande Union Tea Co., 5 Utah 2d 187, 299 P.2d 622.

survey of the record indicates that this was largely plaintiff's own doing. He seemed determined to go into long dissertations and explanations in spite of warnings by the trial judge, evincing a somewhat erratic and belligerent attitude which the jury may well have believed contributed largely to his getting into the difficulty with the officers in the first place. Although he did find it necessary to interrupt a number of times to caution the plaintiff to confine himself to direct answers to the questions asked, there is no indication that the court was other than patient and understanding with him, nor that he did anything to criticize or reprimand the plaintiff beyond what could reasonably be regarded by the court as necessary in the performance of that duty. The role of the trial judge as the one in charge of the trial with the authority to direct its course and to control the behavior of those participating within the bounds of propriety to keep the proceedings orderly must be accepted.[6]

Errors assigned with respect to the admission and the exclusion of evidence have been examined: when it is borne in mind that the trial court is allowed some latitude of discretion in ruling on such matters, and further, that any ruling to constitute reversible error would have to be not only error, but such as would substantially prejudice the plaintiff's case, we do not deem the errors assigned to be of sufficient consequence to warrant discussion.

■ Finally, the plaintiff contends that the court erred in awarding judgment to the defendants for attorney's fees. This is provided for by statute in this type of case,[7] the validity of which has been ruled upon.[8]

On cross-appeal the defendants contend that the attorney's fee awarded was inadequate. It appears to be well within the limits of reason and is therefore unassailable on appeal.

Judgment affirmed. Costs to defendants (respondents).

CROCKETT, C. J., and CALLISTER, J., concur.

WADE, J., does not participate herein.

HENRIOD, Justice (dissenting).

I respectfully dissent. When plaintiff was arrested he was minding his own business. He had complied with the officer's request to display his driver's license, and was thumbing through his wallet to find his registration certificate. At that instant he had committed no misdemeanor in the officers' presence. As a citizen he could have resisted arrest by using whatever force necessary. At that instant the

6. See 53 Am.Jur. 73; 53 Am.Jur. 79.
7. 78-11-10, U.C.A., 1953.

8. Kiesel v. District Court, 96 Utah 156, 84 P.2d 782.

die was cast in this case which should demand a reversal.

A man's person is as much his castle as his home, and there is even more reason to protect the former than the latter. Only defense urged to the unwarranted arrest was a failure,—not a refusal,—to display a registration certificate. This writer's guess is that such defense was a convenient afterthought,—one which, if valid, was not an answer here, since it appears obvious to me that the facts indicate that at the time of the arrest plaintiff was trying to comply with the request. It is significant that plaintiff was never charged with this offense, but with vagrancy, assault and battery and resisting an officer,—on each of which charges he was exonerated.

The statement of the main opinion that plaintiff "avoided giving his army identification card" on request, is a complete non sequitur, since no law requires him to do so absent an offense having been committed. And when one of the officers asked plaintiff to explain his presence on the street at such an early hour, plaintiff's rejoinder that it was "None of your damn business" was a most resonant echo back to the Battle of Runnymede,—far more significant to me than the echo stemming from the main opinion's old story illustrating that "our surroundings echo back to us just about what we project to them."

A statement by Judge Evans in Roe v. Lundstrom,[1] a similar case decided by us, is as true today as it was then: "Except in emergencies where a prohibited offense or breach of the peace is committed or threatened, a police officer is protected only when armed with a warrant."