412 P.2d 920

**WALKER BANK AND TRUST COMPANY,**
a corporation, Administrator of the Estates
of Minnetta Walker, aka Nettie Walker, de-
ceased, Ila Walker, deceased, John A. Walk-
er, deceased, et al., Plaintiffs and Respond-
ents,

and

J. B. Walker, Involuntary Plaintiff,

v.

**Austin WALKER, Defendant and Appellant.**

No. 10374.

Supreme Court of Utah.

April 12, 1966.

Arthur H. Nielsen, Harold R. Boyer, Salt Lake City, for appellant.

Frank J. Allen, of Clyde, Mecham & Pratt, Thomas C. Cuthbert, Salt Lake City, for respondents.

HENRIOD, Chief Justice:

Appeal from a judgment voiding deeds executed by defendant's mother and sister and requiring defendant, as trustee, to account to his sister as to property received from her, subject, however, to a lien in his favor for his expenditures, such accounting and amounts hereafter to be determined by the court. Affirmed, but modified with no costs awarded.

This case was consolidated with that of Walker v. Walker,[1] and by stipulation the

1. 17 Utah 2d 53, 404 P.2d 253 (1965).

record in the latter was incorporated in the instant case. Most of the facts reflecting the history and familial disaffections of the Walker family are recited in that case and will not be reincarnated here. Nor will a review be indulged as to the litigious bent of some of its members that has found its way into the courts.

John A. Walker, husband of Minetta, died in 1912, leaving behind him not only her and six children, but his apparent good judgment and a future destiny of considerable adversity for his heirs. The principals in this case are Minetta, the wife, Ila, a daughter, and Austin, the youngest son and defendant here.

There is considerable competent, credible evidence by both interested and disinterested witnesses that in her declining years, Minetta frequently was bedridden, her legs painfully ulcerated, as was her stomach. Also, that she suffered from pyloric obstruction, progressive mental disturbances and senility, deformed somewhat by an arthritic condition. She was forgetful to the point that sometimes she did not recognize her own kinfolk and evinced a childish temperament reflected by puerile and naive gratuitous remarks. For the most part, her daughters lived with her and helped take care of her until near the end. Austin and his wife, who lived near since 1933, also helped. After that time it appears that Austin paid the taxes under a sort of loose understanding that he could pos-

sess, operate and enjoy the fruits of operating the farm. No one seemed to complain too much about the arrangement.

In 1964, two significant events occurred, however, that later were to fracture family ties even more than theretofore had evolved:

In October, 1954, when Minetta was 84, physically and apparently mentally afflicted, she was taken by Austin at his request to a bank where she signed a deed prepared by an attorney whom Austin,—not his mother, previously had solicited, conveying all of her real property to Austin. This was done while Minetta's daughter, Roma, who lived with and cared for her, was at work and before her return. Austin told none of the family about this incident, and it is obvious from the record that Mother Walker did not mention it either. Five years later she died. Two days after her death Austin recorded the deeds.

In December, 1964, Austin's sister, Ila, was in a hospital apparently dying of cancer. She transferred real property and securities to Austin who frequently visited her,—although there is evidence that when she was well, she was critical of Austin and his wife,—with the understanding that such property should be used to defray her expenses and burial, if necessary. Austin admitted he held these assets in trust for such purpose. This should dispose of appellant's contention that the court erred in

finding there was a confidential relationship between Austin and Ila, since the requirement of an accounting, with lien rights in Austin, as trustee, would be the same irrespective of whether such decision were based on confidential relationship or trusteeship. We affirm the trial court in this respect without further treatment.

With respect to claimed error in denying a motion for new trial because of newly discovered evidence, we think it is without merit under the authorities anent diligence in procurement.

■ The only remaining appellate point is with respect to whether the trial court was justified in concluding that there was sufficient evidence of a clear and convincing nature to show undue influence by Austin over his mother's action in executing the deeds. Putting ouselves in the shoes of the trial court chancellery, as we must, in a case like this, and giving considerable consideration to the trial court's "view of the scene," excluding unimportant matters, we cannot say he was in error.

There is one phase of this case that in logic and circumspect we find ourselves possible victims of impalation on the horns of a dilemma: The trial court said at the end of the case that he thought "truth hasn't been rampant around here, I have to pick what I think is the truth," that "I would think the property in pink ought to go to Austin," and that "I think the testimony of a man who teaches school, who's been a bishop in his church, should be given a little more weight than the other witnesses." Counsel for appellant has tossed these remarks at us to have us conclude that the court did a handspring in arriving at his ultimate decision, and that there can be no retreat thereform, and that his gratuity from the bench is the appealable decision. There is merit to the handspring observation, but this is not decisive of the matter.[2] Consistency may be a jewel but studious reflection may be a cutting tool with which one might change or polish an off-the-cuff facet. We think that the inconsistency of the trial court's gratuitous oral remarks justifiably might be tempered by the pearls of wisdom cultured by respondent's counsel to the effect that the court probably "took a different look at the character of the witness." I am aware of the possibility that counsel for appellant might suggest that such pearls lacked lustre.

■ Examining the whole voluminous record, we feel constrained to hold that the court did not err in its decision which, under the facts of this case, viewed favorably to the successful party is supported by the principles of equity cited by both parties. Saying this we do not condemn Austin as being a purveyor of deceit. Undue influence well may be an honest overzealousness engendered by good motives

2. McCollum v. Clothier, 121 Utah 311, 241 P.2d 468 (1952).

 

but reviewable in equity to determine the rights of individuals.

The trial court decided that a confidential relationship existed between Austin and his mother, and that the former exerted undue influence over her, justifying the avoidance of the deeds. This conclusion was confirmed, we think, in the evidence, and the court's action of necessity indicated that it was based on an inequitable overreaching arising out of such relationship, coupled with the particular facts of this case that resulted in the execution of the deeds. The general principles of equity urged by both sides are in harmony with the conclusions of the court. This is true whether this case be approached from a confidential relationship standpoint or from an undue influence theory, or both.

We think, however, that Austin should be allowed credit for any taxes or other expenses he paid incident to his possession, use and improvement of the property, and should be charged with any proceeds and/or benefits he received as a result of such possession and use of the property. An accounting should be had with respect to these credits and debits, not including, however, any credit with respect to any services he rendered to his mother. It appears that other members of the family may have rendered more service to their mother than Austin,—and to go into this area would lead only to more litigation not justified by the pleading, proof or contentions found in this case.

The decision of the lower court is supplemented so as to provide the accounting mentioned above. It is so ordered, unless the parties, by proper stipulation, show a unified inclination to forego it.

McDONOUGH, WADE and CALLISTER, JJ., concur.

CROCKETT, J., concurs in the result.