501 P.2d 111

STATE of Utah, in the Interest of Mitchell
HURLEY (4–10–54), a person
under 18 years of age.

No. 12713.

Supreme Court of Utah.

Sept. 14, 1972.

Crockett, J., dissented and filed opin-
ion.

---

Ronald N. Boyce, William J. Lockhart, Salt Lake City, for appellant.

Vernon B. Romney, Atty. Gen., David S. Young, Asst. Atty. Gen., Salt Lake City, for respondent.

CALLISTER, Chief Justice:

Mitchell Hurley, a minor, appeals from a decree of the Juvenile Court, wherein he was fined $75 for his violation of Section 76–28–54, U.C.A.1953. Specifically, he was found to have knowingly, resisted, delayed and obstructed one Officer Shilaos, a public officer, in the performance of his duty, to wit: arresting one Michael Valdez.

On July 18, 1970, about 5:30 in the afternoon, Valdez and Hurley were walking through an alley, which is located approximately a half block west of the University of Utah and runs parallel thereto in a northerly-southerly direction. Hurley testified that they had been visiting in a city park, located north of the alley, and that they used the alley as a means to go to a soft drink stand located south and west of the southerly terminus of the alley. Approximately 50 feet from the northern terminus of the alley, Hurley testified that they observed a Volkswagen with the lid of the engine compartment in a raised position. The boys stopped to observe the engine and engage in a brief discussion. As Hurley walked away, an automobile came down the alley, a man emerged, inquired what they were doing and demanded identification. Before Valdez could produce his identification, the man grabbed him, and Valdez attempted to free himself. The man, who was a police officer for the University of Utah by the name of Shilaos, wrestled Valdez to the ground. Hurley attempted to separate the two in response to Valdez's screams for assistance. Other officers subsequently arrived, and the boys were arrested.

Officer Shilaos testified that while he was patrolling the alley, he observed Valdez with a pair of pliers. From the motion of his arms, it appeared to the officer that Valdez was working on the engine. The officer stopped to inquire if they needed assistance. Valdez explained that he was repairing the car for his friend, John. Since Valdez did not know John's last name, the officer asked for identification. Upon observing the identification, the officer inquired whether he knew Valdez from somewhere, and Valdez responded: "Don't you remember?" Valdez struck the officer a blow to the head,

which stunned him. The officer grabbed Valdez and wrestled him to the ground; the ensuing struggle lasted approximately ten minutes, during which time the officer told Valdez that he was under arrest. The officer testified that he requested Hurley's assistance and that Hurley at times helped and at times hindered him. At the conclusion of the struggle the officer arrested the boys on the charge of car burglary.

Based on the foregoing, the trial court found that the minor, Hurley, had violated Section 76–28–54, U.C.A.1953.

On appeal, Hurley asserts that the officer was not discharging any duty of his office so as to invoke the statute. The relevant provisions of Section 76–28–54, U.C.A.1953, provide:

> Every person who wilfully resists, delays or obstructs any public officer in discharging, or attempting to discharge, any duty of his office, . . . .

Hurley contends that the officer had no duty of his office to discharge in the area of the alley; and, therefore, the arrest of Valdez was that of a citizen and not of a public officer.

The officer testified that he had never been instructed to patrol the alley but he included the area on his own volition to protect the "interests" of the University of Utah.

In State v. Sandman [1] this court stated that to constitute an offense under Section 76–28–54, U.C.A.1953, it must appear that (A) a duly constituted public officer (B) engaged in the performance of an official duty (C) was obstructed or resisted by defendant.

Whether the officer was engaged in performing an official duty must be determined by the specific powers granted in Section 53–45–5, U.C.A.1953, which provides:

> Members of the police or security department of any state institution of higher education . . . shall be peace officers and shall also have all of the powers possessed by policemen in cities . . . *providing,* however, that *such powers may be exercised only* in cities and counties in which such institution, its branches or properties are located *and only in connection with acts occurring on the property of such institution or when required for the protection of its interests, property, students or employees,* . . . . [Emphasis added.]

Since the instant case did not involve any act occurring on the property of the institution, the issue is whether the officer's patrol was within the purview of the phrase "when required for the protection of its interests, property, students or employees." There emerges from the statute a legislative intent to restrict the ex-

1. 4 Utah 2d 69, 71, 286 P.2d 1060 (1955).

tra-territorial exercise of power of these institutional police, with one sole exception. The phraseology "when required for the protection" indicates some type of exigent circumstances which impels immediate response. The word "interests" is broad and all inclusive; however, when it is considered in association with the words "property, students, or employees" its general import appears appropriately restricted to these subjects.[2] Thus, the legislature, in this exception, has granted power to these institutional police, beyond the property of the institution, only under some type of exigent circumstances, where the direct and immediate interests of the institution concerning its property, students, or employees is involved.

█ In the instant action, the sole "interests" of the University asserted in this area were the location of a fraternity and a religious institute for students on the block plus a claim that some students parked their cars in the alley. These interests were too remote and indirect to invoke the extraterritorial exception in Section 53–45–5, U.C.A.1953. We are, therefore, compelled to conclude that the officer was not engaged in the performance of an official duty, a necessary element of the offense with which Hurley was charged. The judgment of the Juvenile Court is reversed.

TUCKETT, HENRIOD and ELLETT, JJ., concur.

CROCKETT, Justice (dissenting):

In this review of a conviction, we are supposed to assume that the court believed those aspects of the evidence favorable to the sustaining of his findings and order. I am therefore somewhat at a loss why we are concerned with the "explanations" of the defendant, which expectably, are from his point of view.

My reading of the record leads me to a different view of the situation than seems to be reflected in the main opinion. It is true that Officer Shilaos, in what impresses me as an attempt to be very fair with the defendant, indicated that "at times he appeared to be helping me and at others to be helping Valdez." But a reading of the whole testimony, of the officer, and more particularly of the defendant himself, leaves no doubt in my mind that the trial judge was justified in making each of the findings, paragraphs (a), (b), and (c), quoted below.

The most important aspect of this case is that, as I view this record, the findings, paragraphs (a) and (c) reciting that the defendant used force and violence upon the officer, *stand unassailed,* as will be explained below; and that those findings themselves support the judgment.

2. W. S. Hatch Co. v. Public Service Commissioner, 3 Utah 2d 7, 11, 277 P.2d 809 (1954).

The police officer, Alex Shilaos, was patrolling along University Street, which borders the University Campus. He observed the two young men, Michael Valdez, and defendant, Mitchell Hurley, involved with a Volkswagen in an alley which runs behind buildings which face on University Street. His questions as to what they were doing and for identification did not bring forth reasonable or satisfactory answers. Valdez asserted that he was repairing the car for "a friend." What's his name? Answer, "John." What's his last name? Valdez could give none. The officer radioed for information about the car. It was upon seeing Valdez' I.D. card and indicating recognition that Valdez struck the officer knocking him to the ground. A very substantial struggle ensued in which, as the officer testified, "I believe we both got scraped up on our elbows, watchband was broken, tie was ripped off."

When one keeps in mind that our statute makes anyone who aids or abets in the commission of a crime guilty as a principal,[1] I do not see how there can be any doubt that the evidence supports the findings and order entered November 3, 1971, which recite:

(a) On or about the 18th day of July, 1970, in violation of Section 76-7-3

UCA, said child willfully and unlawfully used force or violence upon the person of Officer Shilaos;

(b) On or about the 18th day of July, 1970, in violation of Section 76-28-54 UCA said child knowingly resisted, delayed and obstructed Officer Shilaos, a public officer in the performance of his duty, to-wit: Arresting Michael Valdez;

(c) On or about the 18th day of July, 1970, in violation of Section 76-60-5 UCA said child did maliciously injure and destroy the personal property of Officer Shilaos and the U. of U. Police Department as follows: Shirt, watch band, and uniform.

It is, THEREFORE, ORDERED ADJUDGED AND DECREED

*   *   *   *   *   *

2. That ___he___ be and is hereby: Fined the sum of $75.00;

.   .   .   .   .   .

I think it pertinent to make the following comments about paragraphs (a) and (c) of the just quoted findings: From my examination of the record I can find no proper nor authoritative disposition, or abrogation, or defeasance of said paragraphs (a) and (c) of the findings.[2] I find no

---

1. Sec. 76-1-44, U.C.A.1953.

2. It is to be acknowledged that there is in the file a letter from the juvenile judge, responding to a letter from defense counsel, in which he indicated agreement with defense counsel's statement that

such order of the court signed by the judge, nor any appropriate minute entry to that effect. Any notations in the record which may be relied upon in support of such a position do not in fact clearly so indicate, but are at best ambiguous and uncertain. Far more important is the fact that any purported action in that regard would predate the entry of the findings and judgment, which occurred on November 3, 1971. After the entry of the findings and order on that date no attack was made upon them in the lower court by way of objection to the findings, motion to strike, motion for a new trial, or otherwise.

If the said findings (a) and (c) were in fact in error because they should not properly have been included in the court's findings, they should have been attacked by appropriate motion, calling the court's attention to the error and giving it an opportunity to rectify it.[3] The defendant having

failed to call this to the attention of the trial court, those findings stand unassailed; and they amply support the finding that the defendant minor was delinquent. The judgment should therefore be sustained on the basis of those findings.

Notwithstanding what I have stated above, which in my judgment should dispose of this appeal, in view of the treatment of the other finding (paragraph (b)) in the main opinion, I feel impelled to also express my views thereon.

The argument which the defendant makes with respect to said finding (b) is that "the University police officer was acting beyond his statutory authority and therefore was not a public officer performing his duty . . .". It is also my opinion that the trial court was amply justified in finding that the police officer was within the performance of his statutory duty when he was obstructed by the defendant, as found in said paragraph (b), which is

---

those parts of the charge, pars. 1, 2 and 4, had previously been dismissed. There are two things which in my mind prevent the letter from having any effect upon the findings (a) and (c) referred to. First, I do not think that a letter from the judge, (or anyone else) which does not purport to be an order, but is merely an incorrect recital of what he thinks the court record is or ought to be, has any effect as an order. Second, the letter from counsel was dated September 30, 1971, and the court's response was dated October 8, 1971, thus a month prior to the entry of the findings and judgment. The findings and order of the court (its

judgment) formally entered on November 3, 1971, would supersede any effect such a letter might have had. See the cases of McCollum v. Clothier, 121 Utah 311, 241 P.2d 468; and Walker Bank & Trust Co. v. Walker, 17 Utah 2d 390, 412 P.2d 920; that the formally prepared findings and judgment supersede even a previously entered written minute entry, see Hartford Accident & Indem. Co. v. Clegg, 103 Utah 414, 135 P.2d 919.

3. See Hamilton v. Salt Lake County, etc., 15 Utah 2d 216, 235 and authorities cited in footnote 6 thereof, 390 P.2d 235; also Williamson v. D. & R.G.W.R. Co., 26 Utah 2d 178, 487 P.2d 316.

the *only* finding the defendant has attacked.

The authority of the police of institutions of higher education is provided in Sec. 53-45-5, U.C.A.1953, which states that they:

> . . . shall be peace officers and shall also have all of the powers possessed by policemen in cities . . . *providing,* however, that such powers may be exercised only in cities *and counties* in which such institution, its branches or properties are located *and only in connection with acts occurring on the property of such institution or when required for the protection of its interests, property, students or employees,*
>
> . . . . . .

Care should be taken to note not only wherein the emphasized language is a limitation, but also wherein it is an *extension* of the authority granted the University Police. Their authority is not restricted to the University Campus but may be exercised "in cities and counties in which such institution" is situated, and thus obviously beyond the confines of the University Campus. In complete harmony with this is the succeeding language: that the authority may be exercised in two situations, stated in the disjunctive ". . . in acts occurring *on* the property of such institution —*or*—when required for the *protection of its* interests, property, *students* or employees, . . ."

The main opinion correctly recites that "the sole 'interests' of the University asserted in this area were the location of a fraternity and a religious institute for students on the block, plus a claim that some students parked their cars in the alley." I confess my inability to see either logic or propriety in the main opinion's declaration that "the word 'interests' is broad and all inclusive . . ." and then proceeding to make what I think is a very restrictive application of that term by ruling that the protection of the interests of the University and its students, i. e., the safety of their persons and property, practically contiguous to the Campus, is not within the authority granted by the statute, which expressly extends not only to the property [Campus] but to "cities and counties in which such institution[s] . . . are located . . . ."

It seems safe to assume that all reasonable and law-abiding persons will agree that the power of the police should be exercised with reason and restraint; within the grant of power prescribed by law; that their conduct should be neither arrogant, high-handed nor over-reaching of their authority, much less that there should be what is referred to as police brutality. To my mind there is nothing in this case even closely approximating any of the excesses just stated.

In justification of the trial court's finding in paragraph (b) as to obstructing the

officer, viewing the evidence most favorable thereto, he could reasonably see the facts thus: that the police officer was in the performance of his duty in the safeguarding of the University, "its interests, property, students or employees . . .." In this alley, just off the edge of the Campus, near where students live and in an area where they park their cars, he observed these men engaged in what he had reasonable ground to suspect was the burglarizing of the car.[4] The indications are (and there is nothing to indicate to the contrary) that he made this approach and asked his questions in a peaceable and courteous manner. Without any provocation other than indicating he recognized one of them, Valdez, he was slugged in the head and knocked to the ground.

This question needs to be confronted: What kind of officers, and what kind of law enforcement would we have, if the officer had at that point simply left the scene? The officer very properly and courageously proceeded to tell Valdez he was under arrest, and attempted to subdue Valdez, and to defend himself. The defendant joined in the melee to prevent the officer from subduing Valdez and joined in subjecting the officer to some very rough treatment and physical abuse which

no person, even a police officer, should be required to endure without redress.

It should require no elaboration to demonstrate what undesirable effects may result from the main opinion's unduly restrictive interpretation and application of the statute. But quite apart from that, and most definite and persuasive in this particular case, is the fact that the two other findings, paragraphs (a) and (c) as hereinabove discussed, stand unassailed; and that they amply support the judgment, which should therefore be sustained. (All emphasis added.)

---

4. That entering an automobile is burglary, see 76–9–3, U.C.A.1953; as to authority of a peace officer to make an arrest without a warrant, see 77–13–3, U.C.A. 1953.