STATE of Utah, Plaintiff and Respondent,

v.

Peter LYON, Defendant and Appellant.

No. 15606.

Supreme Court of Utah.

Aug. 31, 1978.

Robert B. Hansen, Atty. Gen., Michael L. Deamer, Deputy Atty. Gen., William W. Barrett, Asst. Atty. Gen., Salt Lake City, for defendant and appellant.

Francis M. Wickstrom of Warner & Wickstrom, Ogden, for plaintiff and respondent.

PER CURIAM:

This is an appeal by Lyon, a motorcyclist who was convicted in a jury trial of evading a police officer when, at about 4:00 a. m., leaving a public thoroughfare intersection in Ogden, Utah, he refused to stop when signalled to do so by one Carpenter, a "security officer" employed by Weber College to patrol the campus and also its "Events Center," which is separated from the campus, about four blocks away. The complaint was filed under the Motor Vehicle Act, Sec. 41–6–169.10, Utah Code Annotated 1953, as amended, the essential part of which is:

> Any driver who, having received a visual or audible signal from a police officer to bring his vehicle to a stop, operates his vehicle in willful or wanton disregard of such signal so as to interfere with or endanger the operation of the police vehicle, or any other vehicle or person, or who increases his speed and attempts to flee or elude the police shall upon conviction be fined not less than $250.00 or more than $1,000 or imprisoned in the county jail for not less than sixty days or more than one year or both.

While going from the campus to the Events Center, Carpenter saw Lyon lay down his motorcycle at the intersection; and when he turned to approach him, Lyon mounted his bike, and drove off. After Carpenter turned on his flasher and siren, Lyon went through three stop signs and was cornered and arrested in a driveway not far from where he said he was headed. He volunteered that he thought the officer was going to beat him up, because he had been threatened by officers before. Carpenter's explanation for his approach, pursuit and arrest was that there had been some vandalism at the Events Center and he had a "suspicion" that Lyon had been or was going there for some unspecified purpose, presumably to steal. All the above happened on public streets, nothing on the campus nor at the Center, and there was no evidence of any vandalism or anything else that had happened or was about to happen at either place. There was nothing at the intersection that had happened or gave reason to believe would or reasonably might happen to affect the property of the College or anything else on the campus or at the Center.

The State's justification for the arrest is bottomed on what we consider to be a false assumption. It volunteers and *urges* that "The fundamental issue is whether Officer Carpenter's actions were *required* to protect the interests and the property of Weber State College, specifically the Dee Special Events Center." If that is the issue in this case, it logically would follow that Carpenter would be justified in chasing any motorist who stopped at the intersection, surrounded by a residential area, where such intersection was employable for ingress and egress to a thousand other places than just the Weber Campus and its Events Center, including downtown Ogden, Salt Lake, Pocatello or Seattle. All one would have to do is to say that a suspicious officer is *required* to arrest anyone whom he considers to be a suspect for evil-doing on two isolated tracts of land, having no connection, private or otherwise, with an intra- or interstate public thoroughfare. Under the facts of this case there is absolutely nothing that would "require" Carpenter to make an arrest, and it was error for the trial court to not so rule as a matter of law rather than present the issue to the jury as one of fact.

The statute relied upon (53–45–5, U.C.A.1953) which invests a "security officer" employed by a school, with a highly restricted authority to be "a peace officer"

with "all of the powers possessed by a policeman . . . only in connection with acts occurring *on the property* of such institution or when *required* for protection of its interests, property, students, or employees," cannot, under any kind of interpretation, justify the arrest here. To say otherwise, would give such a "security officer" the power to arrest anyone at most any public intersection or on any nearby highway, anywhere leading to the campus or the Events Center, on the mere suspicion entertained by such an officer. It would be a privilege on the part of a statutory educational institution's "security officer" to do that which a fully authorized peace officer could not do in the protection of the hundreds of homeowners' property simply on a "suspicion" created by some real or imaginary incident such as laying down a motorcycle in a public street near a grocery store.

We are committed to the view that use of the words "required for protection" of the college's interests, property, etc. is something akin to the concept of "present danger," in other fields of the law, and that it is not simply tantamount to "suspicion" of past or impending breach of the law.

Lyon heavily relies on *In re Hurley*, 28 Utah 2d 248, 501 P.2d 111 (1972), and it would appear, justifiably so. That State relies on that case also, reasoning that "Protecting the cars of unknown persons in an off-campus alley is not analogous to the instant case." The State ignores the fact, which *is* analogous to the instant case, that Officer Carpenter testified here, as did the officer there, that when he included the alley in his rounds, (which, as Mr. Justice Crockett points out, abutted student quarters, parking their cars in such alley, which also was in an area where there was a fraternity house and religious institution for students), he did so "to protect the interests of the college." (The alley was back of the street abutting the campus.) The State also ignores the fact that in this case the officer said that he not only was protecting the interests of Weber College, but his counsel says he was "required" to protect those interests at an intersection two blocks away from either the Weber

campus or its Events Center. The reason apparent in *Hurley* is that city police are duty-bound to patrol off-campus streets and alleys, even though the basic argument in Mr. Justice Crockett's dissent commands attention and respect to the effect that the statute, including protection of "students" reasonably should include housing facilities and parking places as close to the campus as just across the street. This court was unwilling to go quite that far in stretching the word "require," preferring to interpret it in its usual usage which carries with it the concept that there is a knowledgeable present threat of malfeasance, divorced from guesswork or premonition.

We believe that *Hurley* is dispositive here, and order that the conviction and sentence in this case be vacated. Other points as to questionable instructions and citizens' arrest are moot, therefore, and need no treatment here.

WILKINS, J., concurs in the result.

CROCKETT, Justice (dissenting):

The pivotal question here is whether the officer, charged with the duty of surveillance of Weber College and whose authority extended "only in connection with acts occurring on the property [of Weber College] or when required for the protection of its interests, property, students or employees . . . ", was acting within the scope of that authority.

From hindsight, it is quite easy to say that checking the defendant produced nothing essential to protect the interest or property of the College. But the only fair way to analyze the matter is from the point of view of the officer and the defendant at the time the incident occurred. It was 4 o'clock a. m., a time of night which gives cause to wonder why people are about the streets, particularly a young man on a motorcycle. The main opinion fairly and correctly states the facts.

Officer Carpenter stated that it appeared that the defendant may be having trouble with his motorcycle and in need of help, or

that he might be involved with possible vandalism at the Special Events Center. The defendant testified that his motorcycle had stalled and he had laid it down and was trying to start it when the officer saw him. As the officer approached, the defendant got the motorcycle started and rapidly accelerated through the intersection and sped away. Even though the officer turned on his warning light and his siren, of which the defendant was aware, he increased his speed and ran three stop signs before the officer was able to apprehend him as he turned into a driveway. It was for this conduct that he was charged with the offense of evading a police officer under Sec. 41–6–169.10 quoted in the main opinion.

There is no basis in the record to suggest that the officer intended to harass or mistreat the defendant in any way except that the record does show that he had had some previous "brushes" with the law. I cannot see it as unreasonable that the officer in the performance of his duty regarded the circumstances as somewhat unusual, which required some investigative action on his part in the discharge of his assigned duty.[1] It would hamper officers in the performance of their duties, both positive in assisting persons who may need help, or negative in investigating crime, if they must have probable cause to suspect criminal conduct before they could even stop a person in such circumstances and make reasonable inquiries as to such matters.[2]

It is to be appreciated that most everyone cherishes the ideals of individual freedom assured under our constitutions and our laws; and further, that most everyone, certainly including this writer, likes to feel that he supports and protects those freedoms. Nevertheless, in an organized society, the freest of spirits must in some measure accommodate his conduct to assist in mutual protections for the safety and good

order of the lives and property of us all. This is one of those controversies, so pervasive in the application of the law, between the rights of the individual as compared to the rights and interests of society generally. In my mind, it poses the problem: whether under these circumstances it is the defendant who is unreasonably insisting upon an uncontrolled individual freedom of action, or it was the officer who acted unreasonably and therefore beyond his authority in attempting to stop and question the defendant.

In my view it is fortunate that under our system there is a peaceable and satisfactory way of settling such disputes. The defendant is not obliged to submit to any arbitrary and unreasoning action of a police officer, nor even to the ruling of a judge thereon. He is entitled to have the entire matter submitted to the judgment of his peers, a jury of his fellow citizens. On the other hand, the interests of society, represented by the police officer, are entitled to the benefits and the results of that same procedure.

Judge Wahlquist wisely and judiciously perceived that the critical problem involved was one upon which reasonable minds might differ; and he therefore employed the traditional method of resolving such disputes, by submitting the issue to a jury. He fairly and properly designed instructions well suited to that purpose. They explained to the jury the extent and the limitations of the officer's authority and further:

. . . that a peace officer of a college in Utah has authority to act on the college property. He may also act in the area surrounding the institution, *but only when it would reasonably appear to a prudent person that such act was in fact reasonable* for the protection of the inter-

1. *Adams v. Williams,* 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972); *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

2. That such investigatory stops may be taken when there may not be sufficient probable cause to arrest, see 6A C.J.S. Arrest § 38; *State*

*v. Cloman,* 254 Or. 1, 456 P.2d 67 (1969); *State v. Taras,* 19 Ariz.App. 7, 504 P.2d 548 (1972); *State v. Gastelo,* 111 Ariz. 459, 532 P.2d 521 (1975); *State v. Boone,* 220 Kan. 758, 556 P.2d 864 (1976).

ests, property, students or employees of the institution. [Emphasis added.] [3]

Consequent to the fair and correct carrying out of the procedure as provided in our system of justice, the verdict rendered indicates that the jury believed that the officer was acting within the scope of his authority in protecting the property and the interests of the college and that it was the defendant who acted wrongfully in evading the officer.

It is my judgment that it is wholly unjustified for this Court to now upset the procedure which has been carefully and fairly followed; and that to do so is detrimental to investigative crime prevention and to the administration of justice. I would affirm the conviction.

---

**3.** As to the correctness of that instruction, see *State v. Sedillo,* 81 N.M. 47, 462 P.2d 632 (1969); *People v. Davis,* Colo.App., 565 P.2d 1347 (1977). See also *People v. Robles,* 28 Cal.App.3d 739, 104 Cal.Rptr. 907 (1973); *State v. Davis,* 12 Wash.App. 32, 527 P.2d 1131 (1974); *State v. Valdez,* 277 Or. 621, 561 P.2d 1006 (1977).