268 P.2d 432

**MYERS v. COLLETT et al.**

**No. 7837.**

Supreme Court of Utah.

April 3, 1954.

Christensen, Holmgren & Kesler, City Attys., Salt Lake City, for appellant.

John S. Boyden, Allen H. Tibbals, Salt Lake City, for respondent.

McDONOUGH, Justice.

Appeal from a judgment entered in favor of plaintiff and against defendants for an alleged false arrest and false imprisonment.

Plaintiff was one of three boys arrested by defendants, who were police officers investigating a prowler complaint. The record reveals that defendants were called to the home of one Mark Nichols shortly before midnight on January 6, 1950, to investigate a prowler report. The officers made a short investigation and obtained a somewhat hazy description of the offender. Shortly after midnight and approximately one and one-half blocks away from the Nichols home, defendants observed a young man, closely resembling the prowler's description, cross the street and enter an automobile containing plaintiff and a third young man. Upon questioning, the latter became impertinent and evasive, whereupon the officers took all three boys into custody. No mention was made at this time as to the boys being under arrest or as to any charge upon which they were being questioned, except that they were told that they "probably would not be back." The boys were taken to the Nichols home to stand before Mr. Nichols and his family for possible identification. Although the family was unable to make any identification, the officer in charge retained custody, escorted them to the station house, and booked them for "violation of curfew and investigation of activities." The boys were then confined to a detention home from which they were not released until the day following. After this, Officer McKinney telephoned the parents of the boys, informing them that he had their sons in custody, and when one of the fathers asked, "If I drive down now will you have them released so I can bring them home?", he replied, "They will have to wait there until Captain Steinfelt releases them in the morning and he will be down about 7 or 8 o'clock." There was considerable evidence that the boys would not have been detained had it not been for the an-

tagonizm aroused in McKinney by the attitude of one of the young men.

On trial of this case, the cause as to two of the defendants, who merely booked the juveniles, was dismissed, and the trial court found that the lawful arrest became unlawful ab initio when the boys were taken for identification and that U.C.A.1943, 14–7–19 requires the arresting officer to give the parents opportunity to submit a written promise for the appearance of the minor in court and obtain his release.

■■ There is no question that the officers had the power to make an arrest without a warrant for the violation of Section 4837, Salt Lake City Ordinances, 1944, which is the curfew ordinance. U.C.A.1943, 14–7–21, U.C.A.1953, 55–10–22. The propriety of the arrest may be questioned on the failure of the officers to inform the plaintiff of their purpose to arrest and the purpose of the arrest. The requirements of the procedure on arrest, U.C.A.1943, 105–13–9, U.C.A.1953, 77–13–9, are somewhat relaxed where the arrestee is violating a law in the presence of the arresting officer, for it is held that he knows or should know, the purpose of the arrest. 1 Alexander, The Law of Arrest, § 93. The situation as to the curfew violation is somewhat more difficult than where there are overt acts of criminality for it is questionable in a case such as this whether the arrested boys would know of the charge upon which they were being arrested. There is conflict in the evidence as to whether their ages were asked by the police officers at the time they were taken into custody, and the arrest was made very shortly after midnight, the curfew hour for boys of their age group. Further, there is some evidence that the arrest would not have been made had it not been for the impudence of one of the boys toward the officers, which, of course, is not sufficient as a breach of the peace to warrant an arrest, Pinkerton v. Verberg, 78 Mich. 573, 44 N.W. 579, 7 L.R.A. 507, nor would it justify the arrest of plaintiff, who was an innocent party in this matter.

■ However, the curfew ordinance was being violated at the time, the boys were on notice of the officers' authority as they were wearing uniforms, Commonwealth v. Tobin, 108 Mass. 426, 11 Am.Rep. 375; State v. Evans, 161 Mo. 95, 61 S.W. 590, and recognized that authority by submitting to the arrest. The arrest under these circumstances must be regarded as lawful, for the clear meaning of the statute, U.C.A. 1943, 105–13–9, U.C.A.1953, 77–13–9, makes an exception as to the manner of making an arrest "when the person to be arrested is actually engaged in the commission of, or an attempt to commit, an offense".

■ Whether or not the arrest became unlawful as a result of the delay involved in taking the boys before the Nichols family for identification depends upon the interpretation of U.C.A.1943, 105–13–17, U.C.A. 1953, 77–13–17, which requires that a person arresting without a warrant take the

410

arrestee before the nearest or most accessible magistrate without unnecessary delay. The facts of the present case show that defendants were investigating a prowler complaint, plaintiff and his friends were in the immediate vicinity, one of the plaintiff's companions resembled the description of the offender, plaintiff and his friends were uncooperative and unresponsive to questions propounded to them, and they replied falsely as to the address which they were seeking. These facts justified an investigation of their activities and such an investigation, made in the immediate neighborhood before booking, with a deviation in time of approximately 10 minutes, is not unreasonable. The very short detour made on the way to the station, necessary and prudent for the purposes of investigation, will not render unlawful the lawful arrest.

■ The trial court interpreted the juvenile arrest statute, U.S.A.1943, 14–7–19, U.C.A.1953, 55–10–20, as requiring an officer to contact the parents of an arrested minor prior to any incarceration and giving them opportunity to retain custody of the minor by submitting to the officer a written promise that he would later appear in court. The statute provides:

"Whenever any officer takes a child into custody he shall, unless it is impracticable or has been otherwise ordered by the court, accept the written promise of the parent, guardian or custodian to bring the child to the court

at the time fixed. Whereupon such child may be released to the custody of the parent, guardian or custodian. If not so released, such child shall be placed in the custody of a probation officer or other person designated by the court, or taken immediately to the court or to the place of detention designated by the court, and the officer taking him shall immediately notify the court and shall file a petition when directed to do so by the court."

The Juvenile Code does not expressly provide for notice to be given at the time the offense is committed or arrest is made, but U.C.A.1943, 14–7–18, U.C.A.1953, 55–10–19, provides that "in all such cases due regard shall be given to the rights of parents or other legal guardians and such parents or guardians shall be given a reasonable opportunity to be heard." We cannot read into this section nor the section quoted, supra, any mandatory instruction to police officers to inform the parents *before incarceration,* although notice of the arrest should be given within a reasonable time in order to protect the rights of the parents and afford opportunity for effectiveness of U.C.A.1943, 14–7–19, U.C.A. 1953, 55–10–20, supra. In the present case, although the parents were not notified until after the boys were placed in a detention home, the notification was made shortly thereafter and within the reasonable time contemplated in the statutes.

■ The final question here involved is whether or not U.C.A.1943, 14–7–19, U.C.A. 1953, 55–10–20, places a duty upon a policeman to inform the parents of their custodial rights and a duty to release the child to their custody when a written promise for his appearance in court is given by the parents. Since the statute provides that the officer shall accept the written promise of the parent whereupon the child may be released to the custody of the parent *"unless it is impracticable* or has been otherwise ordered by the court," (emphasis added) it would appear that a certain amount of discretion is vested in the arresting officer. Thus, if he determined, within the limits of that discretion, that the minor ought not to be released to the parent, he ought not be required to give formal notice of the provisions of the statute, which would be a needless act. We must conclude, then, that the legislature did not intend to impress this additional burden upon police officers.

■ However, the officer's discretion will not extend so far as to allow him to impose a policeman's sentence, even though the time of detention be for only a short period. Unless there are valid reasons why the officer must retain custody of the child, i. e. a serious charge against him or unreliability of the parents, the police officer is under a duty to release him to the custody of his parents. According to the evidence, Officer McKinney was asked by telephone by one of the parents, "If I drive down now will you have them released so I can bring them home?" and he denied the request. The charge against the boys was one of violating the curfew law, the purpose of which ordinance is to assure that boys of this age are at their homes after a certain hour, and no penalty is imposed by the ordinance for violation. Officer McKinney knew of the parents of the minors involved and knew them to be responsible members of the community, whose written promise would insure the appearance of the juveniles at court when the time was fixed. However, it was not a parent of the plaintiff here who requested the release of Myers, but the father of one of the other boys. When Officer McKinney called plaintiff's mother and told her that they had her son in custody and would hold him overnight at the Boys' Home, she testified:

"* * * Well he said it was too late for them to be out and I agreed to that and thanked him and that was all."

She made no inquiry as to how she might effect her son's release, but readily acquiesced in the officer's announced plan to hold the boy until morning. Since there was no showing that the request for Myers' release was made at the instigation of his parents, and since we hold that under such state of facts there was no duty upon the arresting policeman to inform the parents of their

rights under the statute providing for the acceptance of a written promise, we must hold that plaintiff cannot prevail in a false imprisonment action.

Judgment reversed. Costs to appellants.

CROCKETT, HENRIOD and WADE, JJ., concur.

WOLFE, C. J., does not participate herein.