369 P.2d 964

Craig CALDWELL and Robert E. Covington, d/b/a Caldwell and Covington, Plaintiffs and Appellants,

v.

ANSCHUTZ DRILLING COMPANY, Inc., a corporation, Defendant and Respondent.

No. 9587.

Supreme Court of Utah.

April 3, 1962.

Hurd, Bayle & Hurd, Wallace R. Lauchnor, Salt Lake City, for appellants.

Young, Thatcher & Glasmann, Ogden, John C. Beaslin, Vernal, Holme, Roberts, More & Owen, Denver, Colo., for respondent.

CROCKETT, Justice.

■ Plaintiffs sued to establish and enforce a contract by which the defendants were to sell them certain oil leases. After the presentation of the plaintiffs' evidence, the trial court granted defendants' motion to dismiss, from which plaintiffs appeal. Under those circumstances, we consider the evidence and every reasonable inference that may be derived therefrom in the light most favorable to the plaintiffs' theory of their case, which we do in our synopsis of the facts.[1]

The plaintiffs are engaged in the business of exploring for gas and oil and of buying and selling of such leases, at Vernal, Utah; and the defendant company is engaged in the same business, with headquarters at Denver, Colorado.

During February of 1961, the plaintiffs negotiated about the purchase of some leases from the defendants. In accordance with an oral understanding, defendants prepared a proposed contract which was signed by its president, Mr. H. O. Lynch, and forwarded it to the plaintiffs at Vernal for execution. It contained the following:

"This contract must be executed by buyer and the earnest money and executed copy of this contract received by the seller on or before February 23, 1961, or this contract is null and void, and the seller and buyer are relieved of any obligations hereunder.

\*    \*    \*    \*    \*    \*

"It is agreed that the buyer, upon execution of this contract shall issue to seller a certified check in the amount of one-fourth of the purchase price or $3,487.89. \* \* \*"

Having just received the contract on February 21, plaintiffs' Mr. Caldwell telephoned Mr. Lynch at Denver and told him that because of the Washington's Birthday Holiday, it would be impossible for them to deliver a certified check by the 23rd, and requested more time. Although defendants claim that an extension was granted only to the 24th, the plaintiffs' version is that Mr. Lynch said, in substance, that they need not be concerned about the time element "so long as we have got a deal."

1. Scoville v. Kellogg Sales Co., 1 Utah 2d 19, 261 P.2d 933.

Plaintiffs sent the contract to their attorney, Mr. A. M. Alloway, in Denver and asked him to complete the deal for them. They also sent him a letter indicating that they would like certain changes made; and another letter giving him authority to sign the contract in their behalf "with whatever modifications consistent with our letter to you of this date which you can effect."

On February 24 at about 2:50 p. m., Mr. Alloway went to the defendants' office, where he discussed the proposed contract with Mr. Lynch. The latter would not agree on any of the proposed changes, so Mr. Alloway offered to sign the contract as it was; and tendered his personal check for $3,487.89, the required one-fourth of the total. Lynch refused to accept it on the ground that it was not certified as the contract required. Alloway then suggested that Lynch accompany him to the bank where they would cash the check and deliver the cash. Lynch refused, saying: "I cannot accept cash." During the conversation Lynch also told him that they now had a better deal. Alloway said he would get the check certified and left for that purpose. When he got to the bank, it was after the bank's 3 p. m. closing, and he was unable to get the check certified. When he returned to the defendants' office, he learned that Mr. Lynch had left for the day. He talked to the defendants' treasurer,

Mr. Wakefield, explained the circumstances to him and also asked him to accept his check, which he refused, stating the same reason: that it was not certified. The following morning Alloway telephoned Lynch and asked him if he would accept a check for the full purchase price. This Lynch refused on the ground that the plaintiffs had not complied with the terms of the contract.

The question of concern is whether, from the situation above described, it reasonably could be found that the plaintiffs had shown that they were ready, willing and able to accept the contract as proffered by the defendants, but were prevented from doing so by arbitrary actions of the defendants. Such business dealings must be carried on in good faith. When one who has made an offer such as the defendants did by this contract, and the offeree has indicated a willingness to accept it, the offeror should not be permitted to deliberately mislead the offeree into believing that he doesn't have to comply strictly with its requirements; then when the latter has relied upon such representation and gotten into a position where it is practically impossible to so perform, suddenly reverse position and demand such compliance, for the purpose of getting out of the transaction.[2]

There is no question but that Mr. Lynch, who was negotiating the contract for the

2. See Schaeffer v. Coldren, 237 Pa. 77, 85 A. 98; cf. statement in Hoyt v. Wasatch Homes, 1 Utah 2d 9, 261 P.2d 927; 19 Am.Jur. 671.

defendants, could waive the strict time requirement. If he did so, the plaintiffs would then be entitled to a reasonable time to execute the contract and make the down payment. The next day, February 24, when Mr. Alloway appeared at the defendants' office, certainly was within bounds in that regard. The defendants took the position at the trial, and here urge, that he did not have unequivocal authority from the plaintiffs to enter into the contract as it stood; whereas, the plaintiffs insist that he had such authority and was instructed to execute the contract for them and pay the money whether defendants agreed to the changes or not.

As the case is now presented to us, we are not greatly concerned with the quarrel of the parties as to the effect of the letters Mr. Alloway had, or what his instructions were. However, it does not seem amiss to observe that the fact that he did offer to sign the contract and to pay one-fourth of the money on behalf of the plaintiffs would seem to manifest a serious intent to enter into the contract for them. But without belaboring the matter, for the present purpose it is sufficient to state that there may well be room for disagreement on the question of his authority. Be that as it may, the point of controlling importance as to this aspect of the controversy is that on the afternoon of February 24, when the critical events took place, the defendants did not make it known that they were standing upon any objection to Mr. Alloway's authority; and we cannot know whether that objection might have been met if it had been raised.

Looking at the matter solely on the basis of the plaintiffs' evidence, and their theory of the case, the objection stated was that the check was not certified. Upon inquiry as to payment in cash, it was refused. Without more being shown, we can see no reason why a certified check should be preferred to cash. Ordinarily the advantage of certification is to guarantee payment of cash, and when the latter is available, there is no need for the former. Therefore, if that was the only reason given for refusing to accept Mr. Alloway's offer, it might reasonably be found that the defendants were using a specious but unsubstantial excuse to get out of the transaction. The evidence that Lynch assured Caldwell that they need not worry about the time limitation; that when Alloway attempted to complete the deal only one day late, Lynch appears to have manifest an uncooperative attitude, saying he could not accept cash; that he left the office for the day without so advising Alloway, when he knew the latter left for the purpose of attempting to get the check certified; could all be regarded as supporting the plaintiffs' theory: that after mailing the contract to plaintiffs, defendants got a better deal and thus did not want the plaintiffs to complete the transaction; that the plaintiffs made a valid and bona

fide offer to perform within the reasonable time as extended by defendants but were prevented from doing so by the latter's conduct.

Upon the basis of the foregoing discussion, it is our conclusion that there are disputed issues of fact which must be resolved before the legal rights of the parties can properly be determined.

The order of dismissal is vacated, and the case is remanded for trial. Costs to plaintiffs (appellants).

WADE, C. J., and HENRIOD, McDON-OUGH, and CALLISTER, JJ., concur.