375 P.2d 458

Matt T. MILDON, Plaintiff and Appellant,

v.

Donald D. BYBEE, Defendant and Respondent.

No. 9639.

Supreme Court of Utah.

Nov. 2, 1962.

Glen E. Fuller, Salt Lake City, for appellant.

Maurice Richards and Darrell G. Renstrom, Ogden, for respondent.

CROCKETT, Justice.

Plaintiff, Matt T. Mildon, sued to recover damages for false imprisonment by the defendant, Donald E. Bybee, a deputy sheriff of Weber County, who detained the plaintiff in connection with determining whether he was the person named in a warrant of arrest the officer was attempting to serve. After presentation of all of the evidence the court directed a verdict of "no cause of action."

The issue of concern here is whether, reviewing the evidence and all inferences fairly to be drawn therefrom in the light most favorable to the plaintiff, a prima facie case of false imprisonment was made out.[1]

On the afternoon of October 25, 1960, at about 5:45 p. m., plaintiff had gone to the dairy farm of George Combe at Uintah, a farming community a short distance southeast of Ogden, to buy milk. As he was standing on the steps of the Combe milk house, along with several other persons, waiting his turn to be served, Deputy Sheriff Bybee drove onto the premises. The officer says that he had been attempting for several months to serve the warrant of arrest on George Combe, issued upon a charge of violating the law relating to the sale of raw milk; and that he had made a number of trips to the Combe farm for that purpose. He approached plaintiff Mildon who was standing near one of the Combe boys and asked him for his identification, to which

---

1.  Caldwell v. Anschutz Drilling Company, 13 Utah 2d 177, 369 P.2d 964 (1962).

Mr. Mildon replied, "I have no identification on me."

The defendant returned to his automobile and communicated by radio with his office. Pursuant to information he received, he came back and asked Mr. Mildon to step aside so he could talk to him. In the conversation Mr. Mildon informed Officer Bybee that he was not Mr. Combe. It is apparent that the officer did not believe him. He states that he was under the impression that the persons present were attempting to give him "the run-around."

It is not unnatural that there is some dispute as to the manner in which the next sequence of events occurred. But it is unquestioned that the defendant insisted that the plaintiff go with him. Plaintiff's version is that he manifested an unwillingness to go, but that it was because the defendant acted in a forceful manner and that he was an officer, armed with a pistol, that he went with him. He was then taken in defendant's car about a mile down the road to the home of a neighbor by the name of Wadman, who informed the defendant that the plaintiff was not George Combe, but was Matt Mildon. It is to the defendant's credit that he apologized to the plaintiff for his mistake and immediately returned him to the Combe place.

We have no disagreement with the defendant's averment that the plaintiff did not suffer any great inconvenience. Nevertheless, false imprisonment occurs whenever there is an unlawful detention or restraint of another against his will.[2] The right to be free from restraint of one's person is one of the most fundamental and cherished of freedoms. It is the policy of the law to afford it the highest degree of protection possible consistent with the rights of others.

It is to be kept in mind that as against this important right of individuals to be free from unlawful restraint there must be measured the practical exigencies confronting peace officers. They must sometimes accost, question and apprehend persons unknown to them. So long as they are acting in good faith, some reasonable latitude must be indulged to allow them to make such inquiry and investigation as is essential to effective law enforcement for the protection of everyone; and for that purpose all citizens owe them some reasonable degree of forbearance and cooperation in the proper performance of their duties. In that tenor of thought, we agree that a peace officer will not necessarily be held liable for mistaking the identity of the person named in a warrant of arrest. But this is true only if he has exercised reason-

2 See Smith v. Clark, 37 Utah 116, 126, 106 P. 653, 657, 26 L.R.A.,N.S., 953 (1910); 22 Am.Jur., False Imprisonment, Sec. 2 (1939); 35 C.J.S. False Imprisonment, § 1 (1960); cf. 76-21-1, U.C.A. 1953.

able diligenec and care in ascertaining the identity before he serves the warrant.[3]

The practical necessities of law enforcement just referred to underly the cases of Myers v. Collett [4] and Wendelboe v. Jacobson,[5] cited and relied on by the defendant, where officers were absolved of blame in taking persons into custody. But those cases are quite different from the instant one. In each of them, the persons involved were apprehended at night under circumstances which justified suspicion that they might be involved in violating the law. The difficulties which developed related to the prerogatives of the officers under such circumstances.

The evidence here shows a radically different situation. At the time Officer Bybee accosted him, plaintiff Mildon was conducting himself as a peaceable and law-abiding citizen. There was nothing whatsoever about his conduct, where he was, or any other circumstance, to give rise to any suspicion that he was then involved in or had any connection with a transgression of the law. Whatever violation, if any there was, had occurred some time in the past. The officer had a formal warrant of arrest and his duty was to find the accused and serve it upon him.

The fact is that Mr. Mildon was a large man, somewhat advanced in years; whereas the subject of the warrant, Mr. Combe, was smaller and several years younger. So there was no reason for mistake on the ground of similarity in physical appearance. It cannot but strike one as strange that the record is devoid of any indication that the defendant asked any of the other several persons present who Mr. Combe was, where he was, or whether Mr. Mildon was Mr. Combe.

Considering the fact that this incident took place in a farming community, the explanation which the plaintiff gave as to why he thought Mr. Mildon was the man named in the warrant is somewhat puzzling:

"* * * I walked up to Mr. Mildon and *he looked like he might have been dressed in clothes that might have connected him* with being a dairy farmer." (Emphasis added.)

It is quite conceivable that the jury may have regarded it as a bit surprising that

---

3. E. g., see statements in Miller v. Fano, 134 Cal. 103, 66 P. 183 (1901); Filer v. Smith, 96 Mich. 347, 55 N.W. 999 (1893). For various treatment of this subject see cases in Annotations: 127 A.L.R. 1057 and 10 A.L.R.2d 750.

4. Myers v. Collett, 1 Utah 2d 406, 407, 268 P.2d 432, dealt with juveniles violating the curfew law and the duty imposed by statute upon officers to notify their parents upon taking them into custody.

5. Wendelboe v. Jacobson, 10 Utah 2d 344, 353 P.2d 178. It was held that the trial court properly submitted the question to the jury as to whether his rights were violated in connection with his being apprehended, questioned and investigated under certain suspicious circumstances. The jury found adversely to the plaintiff.

based upon that observation the defendant officer practically assumed that the plaintiff was the accused. There is undoubtedly room for difference of opinion as to whether the defendant's actions in so assuming and taking the plaintiff with him, without asking any further questions, and without making any explanation, met the requisite standard of reasonable diligence and care under the circumstances. It is our opinion that the issue should have been submitted to the jury. Accordingly, it is necessary that the case be remanded for that purpose. Costs to plaintiff (appellant).

WADE, C. J., and McDONOUGH and CALLISTER, JJ., concur.

HENRIOD, Justice (concurring in result).

I concur in the result, but do not subscribe to the main opinion's attempted differentiation between this case and Wendelboe v. Jacobson. Where misdemeanors are the subject matter, whether the arrest is made at night or in the daytime is of no consequence. Nor does the fact that good faith, reasonable diligence and care in identification are exercised by the arresting officer have anything to do with whether the arrest is unlawful, except by way of mitigation of damages, which may be nominal or great,—

a jury question. He risks an unlawful arrest where a misdemeanor is not committed or attempted in his presence.[1] Even where armed with a warrant he takes his chances at arresting the wrong person.[2] These conclusions seem inescapable in the light of the clear implications of our statutes, which govern the matter. The situation is different where felonies are the subject matter. The statute protects where reason and care are exercised.[3]

1. Title 77–13–3, Utah Code Annotated 1953; Title 77–12, U.C.A.1953.
2. 22 Am.Jur. 405, sec. 73, False Imprisonment.

3. Title 77–13–3(3) and 77–13–3(5) U. C.A.1953.