459 P.2d 433

Dean A. FLYNN dba Flynn Construction Company, Plaintiff and Appellant,

v.

SCHOCKER CONSTRUCTION COMPANY, a corporation, and National Surety Company, a corporation, Defendants and Respondents.

SCHOCKER CONSTRUCTION COMPANY, a corporation, Plaintiff,

v.

Dean A. FLYNN dba Flynn Construction Company, Defendant.

No. 11421.

Supreme Court of Utah.

Sept. 30, 1969.

Richard H. Nebeker, of Cannon, Greene, Nebeker & Horsley, Salt Lake City, for appellant.

Ronald N. Spratling, Jr., of Hunt, Spratling & Walker, Salt Lake City, for respondents.

ELLETT, Justice.

In this opinion the appellant will be referred to as Flynn and the respondent as Schocker.

Schocker was the prime contractor on a storm sewer project for Salt Lake City and Salt Lake County, the work of which was to be constructed under the direction of Salt Lake City Engineering Department. Flynn had a subcontract with Schocker to construct the intake boxes and the clean-out boxes in connection with the project. The gist of this matter involves a determination of whether Flynn's subcontract was lawfully terminated because of his failure to prosecute the work as agreed and whether he was paid in full for services rendered. There is also a claim by Schocker that its damages in completing Flynn's work exceeded any amount earned by Flynn, and it prayed for a judgment for the difference.

Two actions were originally commenced, one by Flynn and one by Schocker. However, at a pretrial conference the two cases were consolidated and thereafter tried together to the court without a jury. The trial judge dismissed Flynn's complaint and awarded judgment to Schocker in the amount of $1,406.16 together with attorney's fee and costs. This appeal followed.

There is no merit to Flynn's contention that these matters are equitable in nature and involve an accounting between the parties. Since both cases are in law, we should affirm the rulings of the trial court if there is substantial evidence to support them.[1]

Flynn's contract contained the following provisions:

> The Subcontractor does hereby agree, within 5 calendar days after being notified by Contractor so to do, to commence the work to be done hereunder, and to continue diligently in the performance thereof thereafter and to fully complete all of said work to the satisfaction of the Contractor and Owner within. AS NEEDED BY GENERAL CONTRACTOR.

Schocker's prime contract required Schocker to complete the entire job within 90 working days after notification to commence work and to pay a penalty of $100 for each day's delay in completing the project.

Schocker began excavating on October 3, 1966, and Flynn began to make intake and clean-out boxes on October 19 following. The city began to complain to Schocker about holes in the street and requested it to cease excavating until the boxes could be constructed. As a result, Schocker and Flynn agreed that Schocker and Flynn both would construct boxes, although Flynn was unhappy at having other

---

1. Charlton v. Hackett, 11 Utah 2d 389, 360 P.2d 176 (1961).

people doing work for which he held a contract. Nevertheless, both parties separately began constructing intake and clean-out boxes on the project.

One reason for delay in finishing the boxes was the failure of Flynn's supplier to furnish cast iron rings and covers for the clean-out boxes. These items could have been secured from other sources. Under the urging of Schocker for Flynn to engage more men and do the work more rapidly, Flynn engaged the services of his brother, who brought three men to work on the job for about one week.

A number of letters and notices were written by the city inspector to Schocker, and a number of oral complaints were made about the quality of Flynn's work and the delay in installing the boxes. On March 2, 1967, Schocker wrote Flynn a letter stating that the city was complaining and that the boxes were not being constructed according to specifications and that unless they were corrected by March 7, 1967, Schocker would take over Flynn's portion of the work as provided in the contract.

Paragraph 2 of the contract also contains the following provisions:

The Subcontractor shall prosecute his work with due diligence so as not to delay the work of the Contractor or other Subcontractors, and in the event that the Subcontractor neglects and/or fails to supply the necessary labor and/or ma-terials, tools, implements, equipment, etc., in the opinion of the Contractor, then the Contractor shall notify the Subcontractor in writing setting forth the deficiency and/or delinquency, and five days after date of such written notice, the Contractor shall have the right if he so desires to take over the work of the Subcontractor in full, and exclude the Subcontractor from any further participation in the work covered by this agreement; or, at his option the Contractor may take over such portion of the Subcontractor's work as the Contractor shall deem to be in the best interest of the Contractor, and permit the Subcontractor to continue with the remaining portions of the work. Whichever method the Contractor might elect to pursue, the Subcontractor agrees to release to the Contractor, for his use only, without recourse, any materials, tools, implements, equipment, etc., on the site, belonging to or in the possession of the Subcontractor, for the benefit of the Contractor, in completing the work covered in this agreement; and, the Contractor agrees to complete the work to the best of his ability and in the most economical manner available to him at the time. Any costs incurred by the Contractor in doing any such portion of the work covered by this agreement shall be charged against any monies due or to become due under the terms of this agreement, and in the

event the total amount due or to become due under the terms of this agreement shall be insufficient to cover the costs accrued by the Contractor in completing the work, then the Subcontractor and his sureties, if any, shall be bound and liable unto the Contractor for the difference.

Flynn objected to the termination of the contract, but on March 8, 1967, Schocker did terminate Flynn's work and thereafter completed the job itself and by subcontract.

■ The evidence given was long, tedious, duplicitous, and not particularly clear, lucid, or enlightening. The trial judge should be commended for his patience in trying the case. Flynn's action was for lost profit on the boxes which he was not allowed to construct or complete. He offered much testimony in an attempt to show that on other jobs (this was his first storm sewer job) his net profit was about 33 per cent of the contract price. Of course, this was entirely immaterial, as the true rule of damages to which he would be entitled in case his contract was wrongfully breached would be the contract price less the amount of money he would have necessarily expended in completing the job.[2]

Schocker claimed that Flynn breached the contract by failing to follow specifications and by not working full time on the job so as to construct the boxes as needed by the contractor in order to avoid having its operations closed down by Salt Lake City.

■ The trial judge on conflicting evidence ruled against Flynn, and we do not think the evidence was such as to require us to reverse the ruling in that regard.

Schocker claimed damages from Flynn because some flooding resulted according to Schocker by reason of a delay in completing the intake boxes. The trial court allowed nothing for this claim. Schocker also claimed that the reasonable cost of completing the Flynn job exceeded the amount of the contract price less amounts already paid to Flynn and his workers and to his materialmen.

The trial court found that Schocker was justified in terminating the contract because of Flynn's failure to prosecute the work diligently and according to the plans and specifications. The trial court further found that the cost to Schocker of completing the boxes begun prior to the time of terminating Flynn's contract was $24,-538.66 and that the value of the work done by Flynn and Schocker based on the contract price was $23,132.50; and the difference between these figures, to wit, $1,406.-16, was awarded to Schocker by way of judgment against Flynn, together with counsel fee and costs. After Flynn's con-

2. See McCormick on Damages, Hornbook Series, Sec. 142, and cases cited therein.

tract was terminated, the boxes not constructed by either Flynn or Schocker were subcontracted to one Nelson at a bid price of $7,450. Under the prime contract (same as Flynn's subcontract) the amount due for these boxes was $6,975, so Schocker lost an additional $475 over and above the amount of judgment rendered. However, Schocker has not raised this matter on appeal, so we ignore it.

In the light of the evidence given, the trial judge was within his prerogative in finding and ruling as he did, and we should not reverse him. The judgment, therefore, is affirmed. Each party should bear its own costs.

CROCKETT, C. J., CALLISTER and TUCKETT, JJ., and MERRILL C. FAUX, District Judge, concur.

HENRIOD, J., does not participate herein.