**Edmund Ellsworth GREENWELL, an incompetent person, by his general guardian, Edmund J. Greenwell, Plaintiff and Respondent,**

v.

**CANYON LINCOLN MERCURY, INC., a corporation, dba Ray Safford Lincoln Mercury, Defendant and Appellant.**

No. 15083.

Supreme Court of Utah.

Feb. 3, 1978.

Don J. Hanson and A. Alma Nelson of Hanson & Garrett, Salt Lake City, for defendant and appellant.

Richard W. Brann, Ogden, for plaintiff and respondent.

WILKINS, Justice:

Defendant appeals from a judgment entered on a jury verdict awarding plaintiff $12,187.96 special damages, and $50,000 general damages in an action for false imprisonment.

All statutory references herein are to Utah Code Annotated, 1953, as amended, unless otherwise indicated.

Plaintiff alleges that defendant caused him to be falsely imprisoned on December 18, 1975. About a week prior to that date, plaintiff, who was then 84 years old, had inquired of defendant concerning the purchase of a four-wheel drive pickup truck. Defendant, who was not a truck dealer, told him that it could acquire a truck to plaintiff's specifications from a dealer in Tremonton, Utah, and the cost would be around $7,000 plus tax and license. Plaintiff said he would let defendant know whether he wanted the truck. On the date of the incident, defendant had acquired a different truck from a dealer in Kemmerer, Wyoming, and telephoned the plaintiff to come in and look at it. The cost of this truck was higher, as it had more options, and defendant offered it to plaintiff for $7,300 plus tax and license. Plaintiff insisted they had agreed upon the amount of $7,000. Defendant came down to $7,175. Plaintiff made out his check for $7,000, left it on the desk, went out of the building and drove the truck away. Ray Safford, president of defendant corporation, directed his manager to call the police, and a salesman to follow plaintiff in the truck.

Defendant's manager testified that he had called the police:

> I told them that a gentleman had just drove off with one of our vehicles and I would like it picked up. (The police) said is this a theft; without a theft we can't— there isn't anything we can do about it. I said okay, then it is a theft, because I want my truck back.

The police found plaintiff driving the truck, and one policeman ordered him to pull over to the side of the road. Plaintiff refused. A second policeman arrived on the scene and maneuvered his car in front of plaintiff and together they boxed him in and forced him to the side of the road. Plaintiff was asked to produce his driver's license. He refused. Plaintiff was then asked for proof of ownership of the vehicle. He answered that the truck was his. Plaintiff was asked to step out of the truck. He refused. The policeman told plaintiff that he was under arrest for auto theft, forcibly removed him from the truck, handcuffed him, and put him in one of the police cars. Defendant's salesman arrived at this time. The salesman informed the policemen that he did not want plaintiff arrested for auto theft. The auto theft charge was then dropped. Nevertheless, one of the policemen took plaintiff to the police station, charged him with driving without a driver's license and resisting arrest, had plaintiff put in jail where he remained for some fifteen to twenty minutes, and then released him on his own recognizance.

At the trial, some of plaintiff's friends and members of his family testified that plaintiff had had good mental and physical health prior to this incident, but that shortly thereafter, his mental competence had changed and become aberrant. Plaintiff became cruel to his wife, and it was necessary to remove her from the home.. He acquired a truck of the same type concerned in this incident, and when it stuck in a snow bank, spun the rubber off the tires. A week after the incident, on December 23, 1975, plaintiff tried to purchase a twin engine, fourteen passenger Lear jet, at a cost of $250,000. He offered a woman who did his wife's shopping $100,000 to quit that job, and tried to make a gift of $1,000 to a police officer. On December 29, 1975, plaintiff was hospitalized in a psychiatric ward, and was in and out of hospitals and nursing homes the year following the incident.

Plaintiff's psychiatrist, who had examined plaintiff for the first time after the incident, initially diagnosed plaintiff's condition as psychotic, but testified that at the time of the trial plaintiff suffered from chronic brain syndrome, commonly called senility. He gave his opinion that plaintiff's condition was caused in substantial part by his arrest and incarceration.

On cross examination, the doctor stated that his notes concerning the history of his patient, which he had taken from members of the family, showed some incidents of

aberrant behavior for some months prior to plaintiff's incarceration. He further testified that the incident of buying the Lear jet was aberrant behavior, but the incident of buying the truck was not, as plaintiff could afford the truck. Defendant read portions of the Doctor's deposition into the record in which the Doctor had testified that both of these last two incidents were similarly aberrant.

At the close of evidence, both parties moved for a directed verdict. The Court denied the defendant's motion, granted plaintiff's motion, and instructed the jury that as a matter of law, defendant was liable for false imprisonment of the plaintiff, and they were to consider only the amount of damages. Defendant requested the Court to instruct the jury that there were two incidents of imprisonment, and requested an instruction directing the jury to find that the defendant was not liable for any imprisonment or arrest made by the police officers after defendant had dropped the charges of auto theft. The Court refused such instruction. Defendant submitted a requested instruction on aggravation of a previously existing condition which the Court also refused.

Defendant cites as error, (1) Failure to direct the verdict in its favor, (2) Invading the province of the jury by directing the verdict in favor of plaintiff, (3) Failure to instruct the jury with respect to two separate imprisonments, and (4) Failure to instruct the jury concerning aggravation of a previously existing condition.

There is no dispute and the record clearly shows, that plaintiff was restrained against his will.[1] The question presented is whether such restraint was lawful.

■ On its first point, defendant argues that it is immune from civil liability under the provisions of Section 77–13–32, and the Court erred in denying its motion for a directed verdict. That section provides in relevant part:

A peace officer, or a merchant, [a] merchant's employee, servant or agent who . . . causes the arrest of a person for larceny of goods held or displayed for sale shall not be criminally or civilly liable where the peace officer, or merchant, merchant's employee, servant or agent has reasonable and probable ground for believing that the person detained or arrested committed larceny of goods held or displayed for sale.

Defendant argues that it had reasonable and probable ground for believing that plaintiff had committed larceny, and therefore, is protected by the statute. However, all of defendant's witnesses testified that they wanted the truck back, and that they never entertained the idea of having plaintiff arrested for the purpose of having him brought to justice. The case of *Haas v. Emmett*, 23 Utah 2d 138, 459 P.2d 432 (1969) should be controlling here. In that case this Court, while recognizing that the plaintiff therein might have been guilty of larceny, nevertheless found that the defendant was liable for false imprisonment of the plaintiff, as it was clear that the defendant initiated plaintiff's arrest with the purpose of having the police collect money owed to defendant.

This Court stated in the *Haas* case, "To initiate criminal proceedings to force the accused to pay money is improper, even though the money is lawfully owed the accuser", and enunciated the following rule:

To subject a person to liability the proceedings must have been initiated primarily for a purpose other than that of bringing an offender to justice. At 23 Utah, 2d 138, 459 P.2d 433.

In the present case, it is clear that defendant used the criminal process to effect a civil remedy, and I feel, the Court did not err in finding that defendant's initiation of the arrest for auto theft was unlawful as a matter of law, and defendant was therefore liable for the resulting imprisonment from that arrest.

---

1. See *Smith v. Clark*, 37 Utah 116, 106 P. 653 (1910); *Mildon v. Bybee*, 13 Utah 2d 400, 375 P.2d 458 (1962).

Defendant argues, as its second point, that it was at least a question for the jury to decide whether defendant had reasonable ground to believe that plaintiff had committed larceny, and that the Court erred in invading the province of the jury by directing the verdict as to liability in favor of plaintiff. As there is no conflict in the testimony, however, I do not find that a jury question was presented, and I believe that defendant's argument is without merit, though the majority of this Court disagrees with me.

■ We are persuaded, however, by defendant's third argument, that the Court erred in not instructing the jury with respect to two imprisonments. After defendant's salesman told the police not to arrest plaintiff on the charge of auto theft, the officers on their own authority, arrested plaintiff and incarcerated him for offenses committed in their presence. Where an officer makes an arrest on his own authority, and not at the instance of the defendant, the defendant is not liable for any resulting damage.[2]

■ We therefore agree that defendant is entitled to an instruction that defendant is not liable as a matter of law for damages caused by the arrest and incarceration of plaintiff on charges of resisting arrest and driving without a driver's license.

■ The psychiatrist testified that the actual incarceration of plaintiff had the most damaging impact. It is likely that the damages awarded by the jury would have been substantially less had it been instructed that defendant was not liable for plaintiff's incarceration in the jail, and the error of the Court requires that the judgment be reversed.[3]

■ Defendant's fourth contention is that the court erred in failing to instruct the jury that if plaintiff had suffered from some condition prior to the incident, he would not be allowed to recover for that condition, but only for any aggravation of that condition which was proximately caused by defendant. We agree that a jury question was presented on this point and defendant was entitled to its requested instruction.

■ The author notes in Justice Crockett's concurring opinion, in which he dissents in part, that he believes that a jury question exists "as to whether the defendant had reasonable ground to believe that the plaintiff had committed larceny on its truck." Chief Justice Ellett and Justice Hall concurred with Justice Crockett. It is necessary to make special mention of this matter for clarification as a majority of three of this Court rules that this case be remanded for trial on the issue of whether the plaintiff committed larceny on defendant's truck—as well as remanded on other matters mentioned in my opinion to which all members of the Court concur.

Reversed, and remanded for a new trial. Costs to defendant.

MAUGHAN, J., concurs.

CROCKETT, Justice: (concurring, but dissenting in part).

I concur except as to the statement "I do not find that a jury question was presented" with respect to defendant's having reasonable ground for believing that the plaintiff stole the truck. It is my opinion that plaintiff's leaving a check, which defendant had not agreed to accept, gave plaintiff no more right to arbitrarily seize and drive away the truck than if he had left a phony three-dollar bill, or nothing at all.

I therefore agree with the defendant's contention that there was at least a question for a jury to decide as to whether the defendant had reasonable ground to believe that the plaintiff had committed larceny on its truck. Accordingly, I would remand this case for trial on all issues.

ELLETT, C. J., and HALL, J., concur in the concurring and dissenting opinion of CROCKETT, J.

---

**2.** See 32 Am.Jur., False Imprisonment, Sec. 34, and cases cited therein.

**3.** See Rule 61, Utah Rules of Civil Procedure, as substantial rights of parties are involved.