Karl WINSNESS and Associates, a partnership, Plaintiff and Appellant,

v.

M. J. CONOCO DISTRIBUTORS, INC., a Utah Corporation, Defendant and Respondent.

No. 15501.

Supreme Court of Utah.

March 6, 1979.

Thomas A. Duffin, Craig Stephens Cook, Salt Lake City, for plaintiff and appellant.

Allen H. Tibbals and Michael Z. Hayes of Tibbals & Staten, Salt Lake City, for defendant and respondent.

STEWART, Justice:

Plaintiff and defendant entered into a land lease agreement dated November 24, 1971, wherein plaintiff ("Lessor") leased certain land to defendant ("Lessee") in Delle, Utah, for the purpose of constructing and operating a service station thereon. Delle is located approximately 50 miles west of Salt Lake City on the road to Wendover and consists of an old, small cafe, motel, and service station. Subsequent to the signing of the land lease agreement, Lessee constructed a gasoline service station on the interstate highway which it opened to the public sometime in July, 1972. The November 24 lease agreement provided, inter alia, that Lessee would operate the station 24 hours each day and pay rental based in part on the quantity of motor fuel sold. On

October 3, 1972, plaintiff sued defendant for failure to operate the station continuously and for other breaches of the agreement. That action resulted in a judgment pursuant to a stipulation on April 22, 1974. The judgment ordered that the lease be continued in effect with certain modifications. As relevant here the provisions of the judgment are that (1) Lessee would, during the remaining lease term, operate the station on a 24-hour per day basis except as product shortage might compel curtailment, and (2) Lessee would within one year construct a sewage lagoon of specified length and width which would meet minimum state and county requirements.

On August 25, 1975, Lessor instituted this action claiming damages subsequent to the date of the stipulated judgment. The complaint, as amended, alleged five claims for relief. The first claim for relief alleged damages for failure to operate the station on a 24-hour basis as provided in the lease and subsequent stipulated judgment. The second claim for relief claimed damages based upon Lessee's incorrect reporting of actual gallons sold; the third claim sought damages based on a violation of the lease and the judgment and alleged that the Lessee failed to complete the sewage lagoon; the fourth claim sought damages for failure to keep the station in good repair; and the fifth claim sought punitive damages for intentional violation of the lease and the 1974 judgment.

At the close of Lessor's evidence, the trial court granted a directed verdict as to all Lessor's claims. Lessor raises as error in this Court the granting of the directed verdict only as to the first and third claims for relief.

█ In reviewing the evidence on a directed verdict, we are required to view the evidence in the light most favorable to plaintiff,[1] and if we find there is doubt as to whether reasonable minds might arrive at different conclusions, then the matter presents a question of fact that should be determined by a jury.[2] Applying these rules to this case, we reverse and remand.

Lessor presented substantial evidence on the issues of Lessee's failure to operate the station on a 24-hour per day basis. Lessor produced witnesses who had frequent, if intermittent, occasion to observe the fact that the station was frequently closed, but there was no evidence indicating the exact amount of time that the station was closed. The witnesses included the operator of a restaurant near the station, a highway patrolman, and a former employee of Lessee. Their testimony was specific that the station was seldom open late at night or on Sunday, and that it was often closed during the day. One of Lessee's officers, Mr. Miller, testified that he believed, based on conversations with Mr. Winsness, that a 7:00 a. m. to 10:00 p. m. operation would satisfy the Lessee's obligations. If, as appears, the closing of the station was a breach of the lease agreement, the evidence clearly establishes more than a technical breach. It provides an ample basis for the inference that the station was closed a substantial portion of the time.

█ The evidence of breach adduced by Lessor having been substantial and persuasive, it was the burden of the Lessee to prove a justification, for the breach, because the facts, if any, were particularly within Lessee's knowledge.[3] Because the matter is here on appeal from a directed verdict at the close of Lessor's case, the record includes no evidence indicating whether Lessee's nonoperation of the station can be attributed to any cause (e. g., government allocation of gasoline) referred to in the 1974 stipulation as a justification for less than a 24-hour per day operation. A party who seeks to escape from the obligation of a contract because of the occur-

1. *Mildon v. Bybee*, 13 Utah 2d 400, 375 P.2d 458 (1962).

2. *Newton v. Oregon Short Line R. Co.*, 43 Utah 219, 134 P. 567 (1913).

3. *Shumak v. Shumak*, 30 Ill.App.3d 188, 332 N.E.2d 177 (1975), and cases there cited.

rence of such an event has the burden of proving its occurrence.[4]

It is evident from the transcript of argument (although not from the language of the order appealed from) that the trial court was not so concerned about the proof of breach and the fact of some damage as it was about the adequacy of the proof of the amount of damage. The crucial issue as to the first claim for relief is whether Lessor adduced evidence from which a jury could have reached a conclusion as to the amount of Lessor's money damages based on something more substantial than speculation.

For the jury to have arrived at a loss of income figure under the first claim for relief, it was necessary only to have determined the number of gallons of motor fuel the Lessee would have sold had it kept the station open compared with the number of gallons actually sold. Lessor's evidence included (1) the sales data of the closest service station to Delle for the relevant years, (2) the sales data of the Delle station for post-stipulation years and for 1972, the last year the station was concededly in nearly continuous operation, and (3) the testimony of an expert witness as to the quantity of motor fuel a station at the location should sell if in constant operation. This testimony was based in part upon Utah Department of Transportation traffic counts for the years 1971 and 1973 through 1976. The trial court sustained objections to the admissibility of testimony as to the business experience of the nearest service station. The Lessor does not complain about that ruling. The trial court also sustained an objection to the receipt of the exhibit showing the gallonage sold at the Delle station during 1972. Foundational testimony indicated that the west-east traffic flow past the station (the primary source of sales) was heavier in the years relevant to the litigation than in 1972. The exhibit was therefore conservative insofar as traffic flow was concerned.

The trial court excluded the exhibit because the data related to a period prior to the 1974 stipulated judgment. The trial court apparently ruled that the receipt of that data would have constituted a reopening of the controversy settled by the 1974 judgment. Lessor was not, however, offering the evidence as proof of pre-1974 damages, but as an index to the volume of sales which could have been anticipated from a constant operation in post-judgment years. This exhibit was material and relevant and should have been admitted. It was for the jury to determine how much weight it deserved based upon foundational elements showing comparability of operations in 1972 compared with the damage period. It appears that a jury could make a reasoned inference of damage based upon the exhibit and other evidence referred to above.

We recognize that comparability between 1972 and the relevant period cannot be exact and that several circumstances existed in 1972 that may have affected patronage that did not exist in the damage period. But the dissimilarities were not the basis of the trial court's ruling of admissibility. Those dissimilarities affect whatever weight is to be given the exhibit by the jury.

The trial court permitted Lessor's expert to offer his opinion concerning the quantity of motor vehicle fuel a station at the Delle location should have sold if in continuous operation and under the traffic circumstances which obtained during post-judgment years. Although the validity of his testimony was open to some question because of an error as to the time of one traffic count, his testimony was not based solely on this count and had sufficient validity to go to the jury.[5]

■ The subject of certainty of proof as to damages has frequently concerned this Court and most others. While subscribing to the doctrine that a verdict based on

---

4.  *Javierre v. Central Altagracia*, 217 U.S. 502, 30 S.Ct. 598, 54 L.Ed. 859 (1910). See also *Zion's Properties, Inc. v. Holt*, 538 P.2d 1319 (Utah 1975).

5.  See *Redevelopment Agency of Salt Lake City v. Mitsui Investment Inc.*, 522 P.2d 1370 (Utah 1974).

"mere speculation" cannot be upheld, we have consistently recognized that some degree of uncertainty is inevitable in damage determinations of the type involved in this suit. In *Security Development Company v. Fedco, Inc.*, 23 Utah 2d 306, 462 P.2d 706 (1969), the issue was the determination of the loss of profits sustained by a lessee whose floor space was periodically reduced in violation of a lease agreement. The evidence in that case was that plaintiff's gross sales diminished with reduction of floor space despite a constant or increasing clientele. We held such evidence to provide a sufficient basis for a determination of damages, even though there was some uncertainty concerning what plaintiff's sales would have been with more floor space. Where there is strong evidence of the fact of damage, a defendant should not escape liability because the amount of damage cannot be proved with precision.[6]

Professor Corbin states the controlling principles which are consistent with the Utah cases:

. . . There is little that can be regarded as "certain," especially with respect to what would have happened if the march of events had been other than it in fact has been. Neither court nor jury is required to attain "certainty" in awarding damages; and this is just as true with respect to "value" as with respect to "Profits." Therefore, the term "speculative and uncertain profits" is not really a classification of profits, but is instead a characterization of the evidence that is introduced to prove that they would have been made if the defendant had not committed a breach of contract. The law requires that this evidence shall not be so meager or uncertain as to afford no reasonable basis for inference, leaving the damages to be determined by sympathy and feelings alone. The amount of evidence required and the degree of its strength as a basis of inference varies with circumstances. A greater amount and a higher degree are required in those cases in which it is usually possible to produce it than in cases where it is usually impossible or difficult and the defendant had reason to know it. . . .[7]

In this case, the evidence as to damages is not so meager as to invite sheer speculation; imprecise it is, but counsels' arguments, the court's instructions, and the common sense of the jury will, no doubt, place the evidence in perspective for proper resolution of the damage issue. With traffic flow data, expert testimony with respect to the percentage of passing cars which could be expected to stop, and gallonage figures for periods of known continuous operation, the jury could base a damage determination on substantial, probative evidence.

The third claim for relief, for failure to construct the sewage lagoon pursuant to agreement, was also dismissed for failure to prove damages. The record is not clear as to the contract theory underlying the court's ruling. Clearly the 1974 stipulation and the judgment are subject to judicial construction as to the relative obligations of the parties.[8] On its face the stipulation imposes on Lessee the duty to construct on the leased premises a sewage lagoon which (1) has a specific area, and (2) satisfies minimum state and county requirements for a sewage disposal facility. The judgment states that the "lagoon system is to serve the defendant's service station and the new restaurant to be built by Karl Winsness." The restaurant has not been built.

Lessee constructed a lagoon to the specified dimensions, but the evidence is competent and undisputed that the facility does

6. *Gould v. Mountain States Telephone & Telegraph Company*, 6 Utah 2d 187, 309 P.2d 802 (1957).

7. Corbin on Contracts, Vol. 5, § 1022.

8. The record does not reveal whether the trial court has construed the lease and stipulation so as to call for a fully equipped lagoon or to make the obligation to build the lagoon to the exact specifications dependent on the Lessor's building of a restaurant making necessary a larger lagoon than was built just for one station.

not satisfy State Health Department standards in that the pumps are not automatic, at least one flowway is not adequately insulated, and the banks are not sloped or rip-rapped to minimum standards. Lessor presented the testimony of an expert, whose qualifications are not questioned, as to the cost of upgrading the lagoon to agency prescribed standards.

The evidence would support a judicial finding that final agency approval could not be forthcoming until there is a source of effluent (such as the stipulation and lease contemplate will be provided by a restaurant) which, when added to the station effluent, would supply enough liquid to test the facility and enable it to function properly.

The trial court appears to have acted on the conviction that Lessor could prove no damage since it had failed to construct a new restaurant and therefore could show no loss of income. It is true that Lessor maintained no ongoing business enterprise whose success would be influenced by the presence or absence of a lagoon; however, it is not clear that loss of profits is the only possible measure of damages.[9] It may be that the parties intended that the lagoon be built simply as an improvement to the property irrespective of whether a restaurant was built.

The measure of damages where there has been defective or incomplete performance of a construction contract is set forth in the *Restatement of Contracts*, Section 346(1) (1932) as:

. . . the reasonable cost of construction and completion in accordance with the contract, if this is possible and does not involve unreasonable economic waste;

. . .

We adopted the Restatement view in *Rex T. Fuhriman, Inc. v. Jarrell*, 21 Utah 2d 298,

445 P.2d 136 (1968). The measure of damages issue as it relates to building contracts, is also discussed at length and a similar conclusion reached in *Williston on Contracts*, 3rd Ed., Sec. 1363 and *Corbin on Contracts*, Vol. 5, § 1089 et seq. and by an extensive annotation at 76 A.L.R.2d 805. Accordingly, if this be the proper measure of damages, Lessor made an adequate showing of damages by proving the reasonable costs of completion to the specifications required by the 1974 stipulation and judgment.

However, it may be that the promise to complete the lagoon to specifications was in fact dependent upon Lessor's building of a restaurant which would, in addition to the station, use the lagoon for sewage disposal. Indeed, for a lagoon of the size contemplated by the parties to operate properly, the quantity of effluent that would be produced by both the station and the restaurant would be necessary. A determination should be made whether the promise to build the lagoon was an independent covenant, or whether it was dependent on the building of a restaurant. If the latter, the trial court was correct in directing a verdict on the third claim for relief. Since it would be inappropriate for this Court to attempt to resolve that issue, it is necessary that this matter also be remanded for further consideration.

Costs to the appellant.

CROCKETT, C. J., and MAUGHAN, WILKINS and HALL, JJ., concur.

9. *Security Development Co. v. Fedco, Inc., supra.*